HOBSON, Justice.
This is an appeal by Lee Williams, doing business as Lee Williams Gas Company, defendant below, from an order of the Circuit Court of Hillsborough County granting a motion for a new trial filed by Joe Puleo, plaintiff-appellee. Defendant-appel-lee Zacker’s Butane Gas Company, Inc. (hereinafter Zacker) seeks to support this order. Puleo has filed a cross-appeal from *291 that portion of the order which denies his motion for judgment against Williams notwithstanding the verdict.
When the events which gave rise to this litigation occurred, Puleo had a business establishment in the same building where Zacker maintained a retail outlet for liquefied petroleum gas. Williams, a gas wholesaler, was transferring liquid butane gas from his transport truck to Zacker’s tank truck in the driveway at the rear of this building when the hose connecting the two trucks suddenly developed a leak, the escaping gas ignited, and the building and its contents were destroyed. Puleo sued Williams and Zacker for personal injuries and loss of property, alleging negligence consisting in violation of rules promulgated by the State Fire Marshal of Florida establishing a minimum distance from buildings for transmission of liquid gas and requiring trucks-to be equipped with certain safety valves.
After the trial, the jury was instructed in part as follows:
“You are further instructed that if you find, from the evidence presented in this case, that the damage to this plaintiff was caused solely by the negligence of the defendant, Zacker’s Butane Gas Company, Inc., then you should return your verdict against the defendant, Zacker, but your verdict should not be returned against the defendant, Lee Williams. I charge you that, gentlemen of the jury. If you determine that the sole negligence was Zacker’s negligence, or his employees’, you couldn’t hold Williams for that.”
No exception was taken to this portion of the charge. The jury returned a verdict exonerating Williams but finding for Puleo against Zacker in the amount of $5,000. In the order appealed from, granting a new trial, the court stated in part:
“Under no view of the evidence, could you convict one without convicting the other., This jury convicted Zacker’s Butane Gas Company, Inc., but exonerated the defendant, ■ Lee Williams. Upon what theory :they acted, I cannot imagine, because the damage in this case was caused by the negligence of both, or the jury should have found that there was no negligence upon the part of either and given, a straight verdict for both of the defendants.”
Appellant Williams contends that it was error to grant a new trial since the verdict was supported by competent substantial evidence. Having reviewed the record, we agree.
The fire regulations relied upon by the plaintiff were subject to interpretation, but it seems plain from the record that the applicable section was not Rule B. 5(f), as plaintiff contended, which prescribes a minimum distance of 50 feet between containers and buildings, since this rule appears to apply only to stationary storage tanks. The applicable rule was B. 13(g), which referred to anothér rule prescribing a graduated scale of distances depending upon tank capacity. This graduated scale was to prevail “where practical” but “lesser distance”. was made permissible “upon approval of the authority having jurisdiction.” The driveway where the transfer was taking place when the fire occurred was adjacent to the rear of the Zacker-Puleo building. It was used by the occupants of the building for delivery purposes, and there was testimony thát it offered the only practical means of making deliveries to Zacker’s place of business.
The City Fire Marshal of Tampa, called as an expert witness by Puleo, testified that the driveway was the only place where the Williams transport truck could be unloaded. A Deputy State Fire Marshal, called by Puleo, confirmed this and further testified to the effect that the qualification “where practical” in Rule B. 13(g) was necessary for some city areas. One Colonel Hesterly, a witness for Puleo, testified that it was a custom of long standing for gas trucks to park in the driveway, and there was testimony that they unloaded there into Zacker’s tanks as a regular practice. The City Fire Marshal, on the issue of whether *292 or not he. approved of this practice, testified that he did not even know Zacker had a butane gas business in Tampa.
Another violation of the fire rules alleged was failure of the Williams and Zacker trucks to have required valves. Again the rules were subject to interpretation, but there was testimony that the Williams truck carried all valves required. This truck had twin tanks, from each of which projected a short pipe, and these pipes came together into a tee at the back of the truck. On each of the pipes was located a hand valve and an automatic cutoff valve. From the tee issued a, single pipe upon which was mounted a master hand valve. This main pipe led to a rubber hose, which connected to a pump operated by the engine of the truck. From the pump, the liquid entered a heavy duty rubber hose, the opposite end of which was connected to the Zacker truck when the accident 'occurred. The connection was made to a pipe at the side of the Zacker truck, and on this pipe was located a back pressure check valve and a hand valve.
When the leak developed in the transmission hose, it was observed by Lee Williams, Jr., who was standing at the rear of the Williams truck at the time. He immediately closed the master hand valve at the rear of the truck, went to the front of the truck, and turned off the ignition. As he moved away from the truck, there was a flash, which was followed by the fire. Just before this, the gauge on the Williams truck had indicated that the left tank was empty and that the right tank contained only about 12 gallons of gas. At the time the hose broke, however, there were about 640 gallons in the Zacker truck. The back pressure check valve at the intake on Zacker’s. truck • had been purposely “gutted,” i. e., the inside mechanism ’ had been removed, leaving only the outer shell. This defect could have been discovered only by probing with a stick or wire, and the hose connection had been-made by a Zacker employee. The valve, had it been in working order, would have functioned automatically to check the flow of gas from the truck when the hose ruptured, but in its condition on the day of the accident, it permitted the entire contents of the Zacker truck,, or approximately 640 gallons of gas, to escape. According to the testimony of the Deputy State Fire Marshal, it was doubtful if the amount of gas which issued from the Williams truck could have caused the fire, but there was rio doubt that the amount which came from Zacker’s truck could have caused it.
The hose which failed belonged to Williams. It was standard, approved equipment and only three or four months old. The City Fire Marshal and the Deputy State Fire Marshal took possession of the hose for examination after the fire and did not testify to anything defective in its condition or suitability for the purpose. .
The record in this case is unusually comprehensive, and it would serve no useful purpose to go into further detail here. The great bulk of the testimony summarized above was elicited from Puleo’s own witnesses. There is no showing that Williams and Zacker were engaged in a joint enterprise or common endeavor beyond that inherent in the relationship between wholesaler and retailer, nor is there evidence of any control exerted by Williams over Zacker’s equipment. Puleo contended that the absence of an excess flow check valve on the main discharge pipe of Williams’ truck, below the tee, violated fire regulations and constituted negligence on Williams’ part. But even if this were correct, and we do not hold that it is, the evidence ■is abundant that the absence of such a valve could not have caused the accident in the circumstances of this case, and in the absence of a causal, connection Williams cannot be held liable. Florida Cent. & Pen. R. R. Co. v. Williams, 37 Fla. 406, 20 So. 558.
In so far as the above facts were controverted, it should be observed that credibility is a matter for the jury. Jacksonville Traction Co. v. Greene, 113 Fla. 316, 151 So. 523. The instruction to the jury reproduced earlier in this opinion was proper, and the jury might well have found *293 that the cause of-Puleo-’s-loss was the persistence of the gas-fed fire resulting from the • large quantity of gas escaping from Zacker’s truck, permitted in turn by the defective character of Zacker’s excess flow check valve. It was wholly consistent with this analysis to exonerate Williams, the verdict was supported by competent substantial evidence, and it was error to grant a new trial of the issues between Puleo and Williams under the circumstances. See Martin v. Stone, Fla., 51 So.2d 33. The portion of the order appealed from is accordingly reversed, with directions to enter judgment on the verdict for appellant Williams. This ruling does not affect so much of the same order as granted a new trial of the issues between Puleo and Zacker, which is.not before us. In view of our disposition of the case, it follows that Puleo’s cross-appeal presents no reversible error.
ROBERTS, C. J., and THOMAS and DREW, JJ.,-concur..