HOBSON, Justice.
This is an appeal from an order setting aside a verdict for defendants as not supported by the evidence and granting a motion for new trial. Appellees, Mr. and Mrs. Katzen, sued the appellants, B. C. Rollins, a contractor, and his surety, American Indemnity Company, for alleged breach of a building contract. This contract provided that Rollins would, for $18,500, build a home for the Katzens in accordance with plans and specifications drawn up by V. H. Nellenbogen, an architect. The contract was prepared in Mr. Nellenbogen’s office on a standard form of the American Institute of Architects. It provided for progress payments twice a month, and although the form indicated that the architect would supervise construction, the latter was not a party to the contract, and there was no such agreement. It was further provided that the work should be “substantially completed” by March 1, 1951, but on March 8, 1951 Katzen and Rollins entered a supplemental written agreement providing for one hundred percent completion of the building within ten days from March 9, 1951.
The plaintiffs contended that Rollins breached the contract in that he failed to complete the building within the time specified therein, that he failed to perform all of the work, labor and services required, and that he permitted liens to be filed against the premises. Rollins contended that on March 1, 1951 the building was substantially completed in accordance with the contract and thereafter he remained on the job until the last day, fully completing the work, but that the plaintiffs interfered with the contract by entering into separate agreements with materialmen and laborers, taking over supervision and control of construction, and making payments directly to various subcontractors without the consent of the architect or the contractor. The defense of the surety substantially followed that of Rollins, but with a cross-claim against Rollins in the event of liability on the bond.
A jury trial was held in the circuit court. The principal witness for the plain *792 tiffs was Mr. Katzen, who testified that the building had not been “substantially-completed” by March 1, 1951, that Rollins had left the job without finishing it, and that liens had been filed against the property through the fault of Rollins. The main documentary evidence for the plaintiffs consisted of their cancelled checks, some of which had been paid to Rollins directly and some to materialmen and subcontractors. These checks totalled approximately $22,000, including about $12,000 paid to Rollins and the balance to others. Rollins testified that “extras” not called for by the contract but required by the owner during the course of construction totalled about $3,500, which would have explained the difference between the $22,000 paid and the contract price of $18,500. On this subj ect the contract provided:
“Where quantities originally contemplated are so changed that application of the agreed unit price to the quantity of work performed is shown to create a hardship to the Owner or the Contractor, there shall be an equitable adjustment of the Contract to prevent such hardship.”
Rollins testified that he began construction on November 1, 1950, with a deposit of $500, but that the progress payment schedule was not kept up, and from the latter part of November on he had to “beg” for money from Katzen and get it whenever he could “catch” him. He further testified :
“Well, it was just that the control of the job was taken completely out of my hands. Mr. Katzen would talk to the men on the job and tell them what to do and, he would tell them he was going to pay them and he would go around and see the subcontractors and tell them he was going to pay them and in a job in that condition, when it gets completely out of the contractor’s hands, the men don’t work properly and they think they don’t have to look to the contractor exactly. The subcontractors look to the owner — there is a divided responsibility there and a loss of control of the job.”
Katzen testified that he had paid material-men because Rollins had left them unpaid. Rollins testified that he paid all bills that he “ever got the money to pay for.” Mr. Nellenbogen, the architect, testified that Katzen had asked him to certify the payments as the job progressed, and that he had tentatively agreed, but after he discovered that Katzen had already made some payments without informing him he declined to have anything further to do with it.
When the evidence was in, the court charged the jury in part as follows:
“I think that we can say without unduly commenting on the evidence that the job was completed substantially as agreed upon. The question that comes up then is this: Did the plaintiff over pay the job? You recall all the various checks that were issued. Some were direct to Mr. Rollins or his company; some were issued jointly to him and subcontractors and material men, and some were paid directly to subcontractors or material men. The plaintiff is entitled to a credit, and you are entitled to treat as a debit against Mr. Rollins any payments made by Mr. Katzen or Mr. Katzen and his wife, whether they were made direct to Mr. Rollins or whether they were made to material men or subcontractors, provided that where they were not made direct to Mr. Rollins that they went to discharge an obligation which Mr. Rollins had incurred on this job, and which you could fairly assume would have been Mr. Rollins’ obligations if Mr. Katzen had not discharged him.
‡ # ^ 9?. ‡ ‡
“Now, I think what the matter hinges on as to whether or not the plaintiff is entitled to recover is whether defendant Rollins has been overpaid or not * * *.
*793 “The contention that Mr. Katzen has breached the contract by interfering with it, I frankly don’t think the evidence would warrant submitting that issue to you.”
The jury brought in a verdict for both defendants. A motion for new trial was thereupon filed by the plaintiffs, on the sole ground that the verdict was “contrary to the probative force and weight of the evidence”. After argument, the motion was granted and a new trial ordered “for the reason that the verdict [was] against the weight of the evidence”. In its order, the court continued as follows:
“I am extremely reluctant to grant a new trial for any reason and particularly on the ground of the insufficiency of the evidence, but in this case, I must do so. The defense was that the plaintiffs had prevented performance by interfering with Rollins’ performance of the contract. The evidence was so lacking in support of this that I charged the jury that this defense had failed. Actually, under the evidence and the charge, it was rational only to find a verdict for the plaintiff in some amount.”
This is the order appealed from.
Appellants contend that the jury resolved a question of fact on conflicting evidence, and the trial court invaded the province of the jury in granting a new trial. Upon examination of the record in this case, salient parts of which we have quoted or discussed above, we agree. The defendants pleaded affirmatively that Katzen had interfered with performance of the contract. The trial court was apparently of the opinion that this affirmative defense had not been proved. Accepting this as a premise, without deciding it as an issue, we think that the jury was still justified in rendering a verdict for defendants.
Appellees make a frank admission in their brief which disposes of one of the main issues in the case, when they say:
“In essence, the instructions to the jury by the Trial Court were that the case turned on whether the defendant Rollins had been overpaid by the plaintiffs. There is no direct evidence in the record of any overpayment or improper payment by the plaintiffs.”
This admission leaves as a material issue only whether Rollins caused loss to the plaintiffs by permitting liens to be filed against the premises. The jury could well have believed that the fault for any liens which might have been filed lay with Katzen, by virtue of his taking over the payments to subcontractors and material-men, and that no misfeasance or non-feasance on Rollins’ part had been made to appear. This activity on the part of Kat-zen was not interference with Rollins’ performance of the contract in the sense that it prevented timely completion of the house, but the jury could well have believed that it was an assumption of responsibility by Katzen which he himself failed properly to discharge. To put the matter more generally, the jury could properly have brought in a verdict for defendants not because an affirmative defense had been proved, but because the plaintiffs had failed to make out a case by showing an injury which they had suffered by reason of any breach of the contract by Rollins.
While we will not lightly set aside an order granting a new trial, we are convinced that the verdict in this case finds abundant support in the record, and since no errors of procedure are contended for, we think that the jury’s function was invaded by the Court. Compare Williams v. Puleo, Fla., 70 So.2d 290, and Geffrey v. Langston Construction Co., Fla., 58 So.2d 698. It follows that the order appealed from must be, and it is hereby, reversed with directions to reinstate the verdict and enter judgment thereon.
Reversed with directions.
MATHEWS, C. J., and THOMAS and t)REW, JJ., concur.