LETTS, Judge,
dissenting:
I dissent.
This case involves the loaned servant doctrine. A contractor, Capeletti Brothers, Inc. while working on the 1-95 project, mistakenly broke a 24 inch water main. Thereupon the City sent out a second contractor, Belvedere Construction Company, to repair the break.
Upon arriving at the scene Belvedere was in need of a crane to help lift the broken pipe out of the trench up onto the canal bank in order to repair it. Belvedere had no such crane, so the Capeletti crane operator was asked to help move the pipe for Belvedere Construction Company. He refused, without permission from his employer, which permission was sought and given. The actual words used by the crane operator in describing his own supervisor’s response to the request for help to move the pipe were:
A. He came up where I was. He says, do anything to help them move the pipe or anything you can do to help them — -to help them. . . . Anything you can *432 do to assist these men to help them get the water line back together do so.
Similarly the supervisor’s version of what he told his crane operator was:
A. I told him he could go ahead and assist in taking the pipe out.
Pursuant to this instruction from his own supervisor, the crane operator helped to move the pipe and in so doing was assisted by a workman from Belvedere Construction Company who gave him the “standard signal” to pick up the pipe which had been attached to the crane by a form of chain sling owned and placed around the pipe by Belvedere’s work force. The crane operator’s description of what next ensued was:
A. Right. When he give me the signal, I picked the pipe up about two foot off the ground. I stopped. He walked back beside the crane where I was. He said, “I want you to pick it up higher.”
And when I picked it up higher is when the chain slipped off of it.
Q. All right. And what do you mean by “the chain slipped off of it”?
A. Well, the chain slipped off the end of the pipe and it went in the ditch and hit Sam Shelton.
Q. And that was one of the Belvedere employees dressed in the uniform or whatever that they had on that day, is that correct?
A. Correct.
Q. That was giving you directions?
A. Right.
Thus the only “direction” from a Belvedere employee consisted of standard hand signals and an oral request to pick the pipe up higher. I am convinced that this occurrence is not sufficient to support the loaned servant doctrine.
The major significance of the loaned servant doctrine in this case is succinctly expressed in appellant’s brief wherein it is noted. “Both Mr. Shelton and the crane operator were Capeletti employees. Thus, if the crane operator’s negligence was the sole proximate cause of the accident, Mr. Shelton’s sole remedy, under normal circumstances, would be workmen’s compensation. However, if the loaned servant doctrine applied and the crane operator became a Belvedere employee, Mr. Shelton could maintain a third-party action against Bel-vedere even if the only negligence in the case was that of his ‘co-employee,’ the crane operator. In addition, if the crane operator became a Belvedere employee under the loaned servant doctrine, Belvedere would lose its indemnity action against Capeletti because it would be chargeable with the crane operator’s ‘active’ negligence. Thus, if the jury found the loaned servant doctrine applicable, Belvedere would be found liable to Mr. Shelton and unable to get indemnity from Capeletti — the exact result reached by the jury below.”
The general rule is that the loaned servant doctrine is applicable if the third-party to whom the servant is loaned has complete control over said servant and directs his (the servant’s) conduct at all times. Burton v. Diamond Sand and Stone Company, 327 So.2d 95 (Fla. 2d DCA 1976). Accordingly, an employee of one organization cannot become the loaned servant of another if the original employer retains any control or direction. It is true that the jury was thus instructed, but I believe it was error to let this issue go to the jury under the undisputed facts of this case.
The order to move the pipe came from the crane operator’s OWN SUPERVISOR and the only direction from the third-party was standard hand signals on how high to raise it and then an oral request to raise it higher. Such do not place the operator under the complete control and sole direction of the third-party. O’Connell v. Roefaro, 137 A.2d 325 (S.Ct.Penn.1958). The operator’s own supervisor remained on the site and Capeletti Brothers, Inc. obviously had a personal interest in moving the pipe since they were the ones who had fractured it in the first place. Accordingly, the work being done was more than the work of Belvedere Construction Company. See Stuyvesant Corp. v. Waterhouse, 74 So.2d 554, 557 (Fla.1954).
*433 There remains the question of whether the instruction even if error, was reversible. I believe it was because the verdict could not have been reached without it.
I would reverse.