387 So.2d 411 (1980)
ATLANTIC TRUCK LINES, INC., Herbert Greenlee and Cleo Allison and Bankers and Shippers Insurance Company of New York, Appellants,
v.
Sherry Lynn KERSEY and Howard Kersey, Appellees.
No. 79-1375.
District Court of Appeal of Florida, Second District.
August 1, 1980.
Rehearing Denied September 9, 1980.
*412 Charles P. Schropp of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellants.
John W. Boult, Tampa, for appellees.
CAMPBELL, Judge.
This appeal raises the issue of whether, under the Interstate Commerce Commission regulations governing "equipment leases",[1] *413 an interstate carrier is liable as a matter of law for the negligence of the owner-lessor, occurring some nine months after the carrier considered the lease terminated, merely because the carrier's ICC identification placard had not been removed from the owner's truck and the carrier had not obtained a receipt attesting to its relinquishment of possession of the truck. We answer in the negative and reverse.
Mrs. Kersey was severely injured in a collision in July, 1975, with a tractor-trailer rig owned by Herbert Greenlee and being driven by his employee, Cleo Allison. At the time of the accident, Allison was driving the empty trailer to Belle Glade to pick up a load of tomatoes, which as will be more fully discussed, is an agricultural commodity exempt from the requirements of a permit from either the Florida PSC or the ICC. A state trooper who investigated the accident cited Allison for reckless driving and for operating the rig without a valid driver's license.[2] At the time of the collision, Greenlee's truck was bearing an ICC placard which prominently displayed Atlantic's corporate name and ICC identification numbers.
The Kerseys instituted an action for personal injuries in February, 1978, naming *414 Greenlee, Allison, and Atlantic and its insurer as defendants. Atlantic is a Florida corporation. Greenlee was apparently a resident of New York, although his tractor-trailer registration at the time of the accident showed a Belle Glade, Florida, address. Allison was also a New York resident. Service of process on Greenlee and Allison was properly made in New York, but neither filed any response, resulting in a default judgment being entered against them in May, 1978.
The matter came on for trial in February, 1979. The only evidence presented by Atlantic was the brief testimony of its traffic manager at the time of trial, the sole purpose of which was to identify the manifest which represented the last trip made by Greenlee for Atlantic in September, 1974. All other evidence at the trial was offered by the Kerseys' witnesses, including the testimony of Atlantic's traffic manager who signed the lease with Greenlee for Atlantic. That evidence showed that in May, 1974, Atlantic entered into a lease agreement with Greenlee in New York whereby the latter agreed to lease his tractor-trailer (then registered in New Jersey) to Atlantic and to provide drivers. This is a common practice in the industry and is referred to in the ICC regulations as "augmenting equipment." See 49 C.F.R. § 1057.4. The lease in question complied with the applicable ICC regulations in every crucial respect. It provided that Greenlee leased the equipment to Atlantic for Atlantic's "exclusive possession, control, use and responsibility" for the duration of the lease. The duration of the lease was to be for at least thirty days and would "continue in effect until breached by either party or until terminated in accordance with the provisions of this paragraph." (Emphasis added.) That paragraph went on to provide:
Either party shall have the right to terminate this Lease at any time ... by mailing or delivering to the other party at the address listed below, two copies of a written notice of termination. Termination shall be effective either upon receipt of the notice of termination from the other party or upon such later date as may be specified in the notice. The party receiving the notice of termination shall receipt the copy of such notice and return such receipted copy to the other party. Without excluding other breaches, any use of Equipment by OWNER or by any person other than CARRIER prior to written termination of this lease is specifically designated a breach of this lease which prevents and therefore terminates CARRIER'S exclusive possession, control and use of said Equipment and in such event CARRIER'S responsibility for said Equipment shall thereupon cease. (Emphasis supplied.)
Greenlee made several trips for Atlantic during the summer of 1974. In September, 1974, however, Greenlee failed to appear in New York to pick up a load which had been designated for Greenlee by Atlantic. Atlantic never heard from Greenlee again and had no knowledge of the truck's whereabouts. When Greenlee failed to appear, Atlantic in October, 1974, notified him by telephone and by mail at the address specified for notices in the lease that the lease was terminated and that the ICC placard should be returned. Atlantic also subsequently sought to reach Mr. Greenlee by telephone but was unsuccessful. This evidence came by way of the deposition of Atlantic's former dispatcher and bookkeeper and was submitted by the Kerseys. The letters which he testified had been sent to Greenlee prior to the accident were not produced, nor was any explanation offered for their nonavailability. There was received into evidence, however, a letter sent some six months after the accident (but two months before the Kerseys' complaint was filed) which referred to the previous attempts to terminate the lease. Furthermore, the Kerseys did not contend at trial, nor do they on appeal, that Atlantic knew where the truck was or that it ever had any dealings with Greenlee after September of 1974, some ten months prior to the collision. Neither do they contend that Atlantic did not notify Greenlee of its intent to terminate the lease.
*415 Their sole contention was based on the continued possession of Atlantic's ICC identification placard by Greenlee after Atlantic lost contact with him. Thus, it was argued that Atlantic was absolutely liable under the ICC regulations to third persons for the actions of Greenlee because Atlantic had failed to obtain a receipt and the return of its identification placard. Unless and until that was done, the Kerseys contended that the lease remained in effect. Atlantic, on the other hand, argued in its motion for directed verdict, as it does on appeal, (a) that there was no evidence that the truck was being used in interstate commerce at the time of the accident, but, to the contrary, was operating intrastate in Florida for the purpose of transporting an exempt agricultural commodity; (b) that the evidence showed without contradiction that the lease had been terminated; and (c) that the truck was not being operated in Atlantic's business, or in furtherance thereof, at the time of the collision.
Rhetorically inquiring whether a lease would remain in effect forever merely because the owner's truck continues to display an ICC placard and the carrier has not obtained a receipt for return of the truck, even where the carrier never sees the owner or his truck again, the trial judge seemed initially inclined to deny the Kerseys' motion for directed verdict made at the close of all the evidence. At that point, however, the Kerseys' attorney referred the court's attention to Section 323.02, Florida Statutes (1975), which provided that motor carriers were prohibited from operating on the highways in Florida without "having obtained from the Public Service Commission a certificate of public convenience and necessity or a permit ... or a certificate of registration of Interstate Commerce Commission authority... ." Since Greenlee was shown not to have had a certificate of public convenience and necessity from the PSC, counsel for the Kerseys seemed to assert that the only authority which Greenlee had for operating on the highways of Florida was Atlantic's ICC certificate. From the record before us, the trial court seemed persuaded by this argument and granted the Kerseys' motion for directed verdict. In doing so, the court never specifically stated that it was ruling that the display of Atlantic's ICC identification placard in and of itself created liability on the part of Atlantic as a matter of law when considered in light of the other undisputed facts.
Neither of the parties' counsel directed the trial judge's attention to Section 323.29, Florida Statutes (1975), which exempts, inter alia, the transport of agricultural products from any certification requirements.[3] It was undisputed that the Greenlee truck was en route to pick up a load of tomatoes when the collision occurred. Hence, the truck had authority to be on the highway without Atlantic's ICC certificate. But even if Greenlee had been carrying a nonexempt commodity and, therefore, would have been without state authority to be on the highway, we fail to comprehend why the factual question concerning termination of the lease after an apparent breach and repudiation by Greenlee by his failure to pick up a designated load should recede to a position of irrelevancy and liability be automatically visited upon Atlantic.
If that was the basis for the granting of the Kerseys' motion for directed verdict, the trial court may have been influenced by cases containing language similar to that in Cosmopolitan Mutual Insurance Co. v. White, 336 F. Supp. 92, 96-7 (D.Del. 1972):
Establishing a mandatory requirement upon ICC authorized carriers to remove placards and to obtain receipts ... may impose a substantial burden upon such carriers since the [owners] are not likely to cooperate after termination. However, the ICC placard and lease agreement are the equipment's authorization *416 for being on the road, and when not removed upon cancellation of a lease, subject the public to the evils which Congress attempted to eliminate... . (Emphasis added.)
See also Mellon National Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3d Cir.1961). As previously indicated, Greenlee's truck did not need Atlantic's ICC placard or the lease agreement as authorization to be on the road. Had the trial court's attention been drawn to the exemptions contained in Section 323.29, it is likely that the Kerseys' motion for directed verdict would have been denied.
That would have been the proper procedure, for we are of the opinion that whether a lease such as the one involved here is terminated is a question to be answered by the trier of fact. We refuse to subscribe to the view that a lease can only be cancelled, after an apparent breach by the owner-lessor, by the carrier's obtaining its ICC placard and a receipt showing that the owner has retaken possession of the equipment. In our view, Section 1057.4(b) ("Receipts for Equipment to be specific") and Section 1057.4(d)(1) ("Identification to be removed when lease terminated") do not specify the means by which an equipment lease must be terminated. Rather, those sections indicate that if the carrier has its placard and a receipt, then that is conclusive of the question of whether the equipment lease, and the carrier's exposure to liability, was terminated. On the other hand, the carrier's failure to obtain the placard and the receipt after breach by an owner-lessor is not conclusive evidence that the lease has not been terminated. If the carrier has not complied with the ICC regulations, at most a presumption is created that the lease remains in effect, but is rebuttable by evidence that the lease was in fact breached and/or terminated and that the carrier diligently endeavored to comply with the regulations. See e.g., Brannaker v. Transamerican Freight Lines, Inc., 428 S.W.2d 524 (Mo. 1968).
We recognize contrary language such as the following:
Obtaining a receipt for the return of the vehicle and removing the ICC placard are prerequisites to termination of an ICC lease.
Cosmopolitan Mutual Insurance Co. v. White, 336 F. Supp. at 96. See also Bankers & Shippers Insurance Co. of New York v. Watson, 216 Va. 807, 224 S.E.2d 312 (1976); Mellon National Bank & Trust Co. v. Sophie Lines, Inc., supra. As indicated, we do not agree with that proposition. Moreover, the facts in the above cited cases did not compel utterance of such a proposition. In Bankers & Shippers Insurance Co. of New York v. Watson, for example, the owner disputed having received a letter of termination which the carrier claimed it had sent two days before the accident. Furthermore, the carrier had not made "a single effort' to comply with the ICC regulations. And in Mellon, it was undisputed that the lease was still in effect, and the issue was whether the carrier was liable for the owner's negligence while the owner was hauling, apparently with the carrier's knowledge and to its benefit, for a third party.
Thus, although those cases could have turned on the factual question of whether or not the termination provisions of the leases had been complied with, the courts determined that the carriers were liable as a matter of law for failure to comply with the ICC regulations. Under such an interpretation of the regulations, a lease could be terminated by a carrier because the owner breaches the agreement by never appearing to pick up a designated load, yet despite its best efforts to locate the truck or its owner, the carrier would still be liable as a matter of law if it failed to obtain the placard and receipt. Such a result would offend even the most cynical, and we do not think that it was intended by Congress. Rather, we are of the view that Congress sought to prevent, among other abuses, ICC certified carriers from avoiding tort liability to the public by entering into single trip leases with independent contractors. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, 37, 96 S.Ct. 229, 234, 46 L.Ed.2d 169, 177 *417 (1975); Simmons v. King, 478 F.2d 857, 865-67 (5th Cir.1973); Brannaker v. Transamerican Freight Lines, Inc., supra. The regulations promulgated by the ICC were designed to place ultimate responsibility on the carriers for the duration of the lease agreement. As long as the lease remains in effect and the owner displays the carrier's placard, the carrier will be deemed to be in possession of the equipment and responsible for the torts of the owner and his agents and employees. We do not believe that the regulations were intended to impose tort liability upon carriers in cases such as the one sub judice.
Having reached our conclusion that the uncontroverted evidence indicates both a breach by Greenlee and subsequent attempts by Atlantic to terminate the lease as a result thereof and to reacquire its ICC identification placards, we cannot hold Atlantic liable to the Kerseys as a matter of law because of Greenlee's continued display of Atlantic's ICC identification placard. Since the evidence is uncontroverted and there are no factual disputes, we must therefore reverse with instructions to direct a verdict for Atlantic. Having reached our conclusion on the basis stated, we are not required to and do not address the issues of whether, absent a breach or termination, Atlantic would have been excused from liability because Greenlee's truck was not being used in interstate commerce or was not being used in Atlantic's business or in furtherance thereof.
OTT, Acting C.J., and DANAHY, J., concur.
NOTES
[1] The text of the ICC Regulations pertinent to this appeal, 49 C.F.R. § 1057.4, provides as follows:

§ 1057.4 Augmenting equipment.
Other than equipment exchanged between motor common carriers in interchange service as defined in § 1057.5, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:
(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
(1) Parties. Shall be made between the authorized carrier and the owner of the equipment.
(2) Written contract required. Shall be in writing and signed by the parties thereto, or their regular employees or agents duly authorized to act for them in the execution of contracts, leases, or other arrangements.
(3) Minimum duration of 30 days when operated by lessor. Shall specify the period for which it applies, which shall be not less than 30 days when the equipment is to be operated for the authorized carrier by the owner or employee of the owner; excepting:
.....
(b) Where the motor vehicle so to be used is one which has completed a movement covered by section 203(b)(6) of the Act and such motor vehicle is next to be used by the motor carrier in a loaded movement in any direction, and/or in one or more of a series of movements, loaded or empty, in the general direction of the general area in which such motor vehicle is based; and
(c) Provided. In either instance that prior to the execution of the lease, the authorized carrier receives and retains a statement signed by the owner of the equipment, or someone duly authorized to sign for the owner, authorizing the driver to lease the equipment for the movement or movements contemplated by the lease, certifying that the equipment so leased meets the qualifications enumerated in (a) or (b) of this subsection, and specifying the origin, destination, and the time of the beginning and ending of the last movement which brought the equipment within the purview of this subsection.
.....
(4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement except:
.....
(7) Copies of lease and their distribution copy to be carried on vehicle. Shall be executed in triplicate; the original shall be retained by the authorized carrier in whose service the equipment is to be operated, one copy shall be retained by the owner of the equipment, one copy shall be carried on the equipment specified therein during the entire period of the contract, lease, or other arrangement, unless a certificate as provided in paragraph (d)(2) of this section is carried in lieu thereof.
.....
(b) Receipts for equipment to be specific. When possession of the equipment is taken by the authorized carrier or its regular employee or agent duly authorized to act for it, said carrier, employee or agent shall give to the owner of the equipment, or the owner's employee or agent a receipt specifically identifying the equipment and stating the date and the time of day possession thereof is taken; and when the possession by the authorized carrier ends, it or its employee or agent shall obtain from the owner of the equipment, or its regular employee or agent duly authorized to act for it, a receipt specifically identifying the equipment and stating therein the date and the time of day possession thereof is taken.
(c) Safety inspection of equipment by the authorized carrier. It shall be the duty of the authorized carrier, before taking possession of equipment, to inspect the same or to have the same inspected by a person who is competent and qualified to make such inspection and has been duly authorized by such carrier to make such inspection as a representative of the carrier, in order to insure that the said equipment complies with the Motor Carrier Safety Regulations of the Federal Highway Administration of the Department of Transportation. The person making the inspection shall certify the results thereof on a report in the form hereinafter set forth, which report shall be retained and preserved by the authorized carrier... .
(d) Identification of equipment as that of the authorized carrier. The authorized carrier acquiring the use of equipment under this rule shall properly and correctly identify such equipment during the period of the lease, contract, or other arrangement in accordance with the Commission's requirements in Part 1058 of this chapter (Identification of Vehicles). If a removable device is used to identify the acquiring authorized carrier as the operating carrier, such device shall be on durable material such as wood, plastic, or metal, and bear a serial number in the acquiring authorized carrier's own series so as to keep proper record of each of the identification devices in use.
(1) Identification to be removed when lease terminated. The authorized carrier operating equipment under this part shall remove any legend, showing it as the operating carrier, displayed on such equipment, and shall remove any removable device showing it as the operating carrier, before relinquishing possession of the equipment.
[2] Atlantic does not dispute the trial court's finding that Allison's negligence was the sole cause of the accident, nor does it contest the $585,000 in damages awarded to Mrs. Kersey and her husband.
[3] This oversight is to some extent understandable in light of the failure of Section 323.02, Florida Statutes (1975), to alert a reader to the existence of any exceptions to its prohibition. That section has since been amended, however, to specifically provide that a motor carrier may also operate on the public highways in Florida if it qualifies for "an exemption as hereinafter provided." See Ch. 77-434, Sec. 3, Laws of Florida.