462 So.2d 76 (1985)
EMPIRE FIRE AND MARINE INSURANCE COMPANY, an Insurance Corporation, Appellant,
v.
TRUCK INSURANCE EXCHANGE, an Insurance Corporation; Churchill Transportation, Inc., a Corporation; Berl W. Denslow and Stacy L. Coates, Appellees.
No. AY-62.
District Court of Appeal of Florida, First District.
January 3, 1985.
Rehearing Denied January 30, 1985.
*77 Joseph O. Stroud, Jr., Rogers, Towers, Bailey, Jones & Gay, Jacksonville, for appellant.
William R. Swain, Webb, Swain & Watson, Jacksonville, for appellee Berl W. Denslow.
S. Thompson Tygert, Jr. and Carl Scott Schuler, Jacksonville, for appellee Truck Ins. Exchange.
John I. Todd, Jacksonville, for appellee Churchill Transp. Inc.
WIGGINTON, Judge.
Appellant, Empire Fire and Marine Insurance Company (Empire), appeals a final judgment in a suit for declaratory judgment to determine which, if either, of two insurance companies (Empire or Appellee Truck Insurance Exchange) must provide liability insurance for payment of damages to the plaintiff in the action, Stacy Coates, as a result of injuries sustained by her when she was a passenger in a tractor rig driven by Berl W. Denslow. We reverse the trial court's findings: that Denslow was not operating the truck in connection with the business of Churchill Transportation, Inc.; that under the facts of this case, Empire is solely responsible for liability coverage of Denslow; that Churchill has no liability to Coates and thus its insurer, Truck Insurance Exchange, is not liable to Coates.
Churchill Transportation, Inc. (Churchill) is a Michigan corporation engaged in the business of interstate transportation of goods and is licensed as a common carrier subject to the regulations of the Interstate Commerce Commission (I.C.C.). Churchill performs its operation through leasing trucks. Churchill obtained insurance coverage for its leased trucks from Truck Insurance Exchange, Inc.
Denslow owned a truck for which he obtained a policy of insurance from appellant Empire. That policy provides coverage for the truck except "while the covered auto is used in the business of anyone to whom it is leased or rented if the lessee has liability insurance sufficient to pay for damages in accordance with chapter 31 of the Michigan code." In April, 1981, Denslow and Churchill entered into a "permanent lease" arrangement of the truck, as defined in 49 C.F.R. § 1057.2(f), due to the fact that the lease was for an indefinite period of time and for over thirty days. Under the terms of the lease, Churchill would have exclusive possession, control, use and responsibility for the operation of the truck, including full responsibility to the public. The lease further provided that Churchill would comply with all I.C.C. regulations *78 and maintain insurance coverage for the protection of the public in accordance with those regulations.
49 C.F.R. § 1057.2(d) provides that a person to whom title to equipment has been issued, or who, without title, has the right to exclusive use of equipment for a period longer than thirty days, or one who has lawful possession of equipment, registered and licensed in any state in the name of that person, is considered the owner of that equipment under the I.C.C. regulations. Section 1057.2(f) defines a permanent lease as a lease in which the authorized carrier acquires the use of the equipment, with or without the driver, from an owner for a period of thirty days or more. Section 1057.12(d) requires that the lease shall provide that the authorized carrier-lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease and that the authorized carrier-lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.
In May, 1981, Denslow was employed by Churchill to drive the leased truck, with a trailer attached, from Michigan to Jacksonville, Florida, to deliver the trailer to Livingston Industries. Churchill provided Denslow the I.C.C. signs to post on the truck and they were posted. Denslow, along with an authorized co-driver, Dunn, arrived in Jacksonville at 6:00 p.m. on May 28, delivered the trailer to Livingston Industries, and checked into a Jacksonville motel for the night. During the entire trip, Denslow was under the direction of Churchill and had a duty to call in to the company for instructions at least twice a day.
At 7:00 p.m. on May 28, Denslow reported in to Churchill and was instructed to drive back to Livingston Industries, pick up an empty trailer, and deliver that trailer to Macon, Georgia by 7:30 a.m. the next day. Denslow realized that he would need to leave Jacksonville by 11:30 p.m. that night in order to make the next morning deadline in Macon. He and Dunn walked across the street to a restaurant to eat dinner and then walked down the street to a lounge, where they met Stacy Coates and another woman. Coates suggested that they drive across town to another lounge to play video games. The women drove Denslow and Dunn back to their motel, from which all four rode in the tractor rig to the second lounge. During the return trip to the motel after leaving that lounge, while riding down the interstate in the tractor rig, Coates began operating the CB radio for her own personal pleasure. She rolled down the window on the passenger side and stuck her head and arm out to wave at another truck driver, at which time the door of the tractor opened and Coates fell out onto the pavement and sustained injuries, for which she filed suit against Denslow, Churchill, and their insurers. Truck Insurance filed a complaint for declaratory judgment, naming as defendants Churchill, Denslow and Coates, and seeking a judicial determination as to whether Truck Insurance provided liability coverage for the injuries to Coates. Empire, Denslow's carrier, struck back and filed a motion to intervene in the declaratory judgment action, which was granted, and filed an amended counterclaim and cross claim for declaratory judgment.
The trial judge found that, under the facts of this case, Denslow was not "in the business of" Churchill at the time of the accident and therefore the Truck Insurance policy does not apply. The judge also concluded that Churchill has no liability to Coates in this case anyway since, under Florida law, an unauthorized passenger in a vehicle is a trespasser as to the owner of the vehicle and is precluded from recovering from the owner for injury absent a showing of a willful or wanton act by the owner. Mainer v. Cambron Construction Co., 237 So.2d 275 (Fla. 4th DCA 1970).
In light of the insurance contracts involved here, the I.C.C. regulations, and the facts of this case, we find that Churchill does have liability to Coates which is primary over any liability of Denslow and Empire. Although we recognize there to be a line of cases contrary to our adopted *79 position, we believe the better reasoned authority supports our determination in this case.
In Rodriguez v. Ager, 705 F.2d 1229 (10th Cir.1983), the owner of a truck had entered into a lease agreement with an I.C.C. licensed lessee. At the time of the accident, the lease was on the verge of being terminated. The owner had given the lessee notice of his desire to terminate the lease and, at the time of the accident, the owner was permitting his brother to use the truck on business which clearly was not that of the lessee. Finding that at the time of the accident the lease had not been cancelled and that the lessee was subject to I.C.C. regulations, the court determined that regulation 1057.4 (now 1057.12) placed responsibility upon the carrier-lessee as a matter of law since the lease was still in effect. The court held that the I.C.C. carrier's liability is not governed by the traditional common law doctrines of master-servant relationships and respondeat superior; that, instead, I.C.C. regulations impose liability upon the carrier during the period the lease is in effect even though at the time of the accident the driver is not on a mission for the carrier.
Similarly, in Cosmopolitan Mutual Insurance Company v. White, 336 F. Supp. 92 (D.Del. 1972), the driver of a tractor that was under lease to a motor carrier had completed a trip for the carrier and the carrier did not have any loads available for the return trip. The driver was able to obtain a load from a third party which could be picked up the following day. The driver drove to another town for the night and, on that trip, an accident occurred. The carrier argued that it was not liable for damages resulting from the accident because the driver was not in the business of the carrier at the time of the accident. The court held that the driver was in the business of the carrier as the lease between the owner and the carrier was still in effect at the time of the accident. The court stated that an I.C.C. carrier's liability for equipment covered by leasing arrangements is not governed by the traditional common law doctrines of master-servant relationship and respondeat superior; that the policy terminology "in the business of" must be read in light of the I.C.C. regulations since the regulation have the effect of law.
The earlier case of Mellon National Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3rd Cir.1961), reveals that while transporting a load for a third party after being instructed by the lessee-carrier to park the truck, the driver had an accident. The court affirmed the trial court's ruling that as a matter of law the truck was in the business of the carrier and the carrier was liable for the operation of the truck at the time of the accident, pursuant to I.C.C. regulations.
We agree with our sister court's pronouncement in Atlantic Truck Lines, Inc. v. Kersey, 387 So.2d 411, 417 (Fla. 2d DCA 1980), that:
The regulations promulgated by the ICC were designed to place ultimate responsibility on the carriers for the duration of the lease agreement. As long as the lease remains in effect and the owner displays the carrier's placard, the carrier will be deemed to be in possession of the equipment and responsible for the torts of the owner and his agents and employees.
In the instant case, Denslow would not have been authorized to drive the tractor rig into this state but for his employment with and the I.C.C. permit of Churchill. We decline to enter the quagmire of having he outcome of cases such as the one before us being dependent entirely upon the traditional factual question of whether the driver was directly "in the business of" the employer, an I.C.C. registered interstate commerce carrier. In the interest of protecting the public and in order to establish some modicum of consistency for the benefit of the insureds and insurers, the better view, in our opinion, is that pursuant to the I.C.C. regulations, which place complete and ultimate responsibility upon the I.C.C. carrier for the duration of a lease, the interstate carriers face the possibility of *80 liability for any injuries caused by their leased vehicles and drivers.
As discussed in Simmons v. King, 478 F.2d 857 (5th Cir.1973), many considerations behind enactment of the I.C.C. regulations
... were to correct abuses that had arisen under often fly-by-night arrangements with consequent damage to the development and maintenance of a sound transportation system and to the public interest from a helter-skelter operation of thousands of unregulated vehicles on the highways as a menace to safety. One way to assure responsibility was to impose on the certificated carrier the full responsibility for the entire operation of temporarily leased equipment, whether owner-driver, or otherwise.
Appellant has presented an alternative argument that Churchill and Truck Insurance are liable to Coates because Denslow was a statutory employee of Churchill. We recognize that in Simmons, the court held that the driver of the leased equipment became a statutory employee of the lessee. Also, according to the decision in Burton v. Diamond Sand and Stone Company, 327 So.2d 95 (Fla. 2d DCA 1976), if the driver is a statutory employee of the interstate carrier, the interstate carrier's insurer becomes primarily liable for damages, based on the doctrine of respondeat superior, while the policy of the owner of the vehicle provides secondary coverage based on the vicarious liability of the owner of the truck. However, due to our finding of liability on the part of Churchill and Truck Insurance on the other ground discussed above in reliance on Rodriguez, White, Mellon, and Kersey, we find it unnecessary to adopt this alternative theory of liability under the facts of this case.
In conclusion, we find that Churchill, and therefore its insurer Truck Exchange, are potentially liable to Stacy Coates for the injuries she suffered and that liability is primary. Denslow and his insurer, Empire, also face liability to Coates, but that liability is secondary to that of Truck Exchange and Churchill.
REVERSED.
JOANOS and NIMMONS, JJ., concur.