Mr. Ashley seriously injured his right foot on January 31, 1992 when he slipped and fell while "strapping down" a load of fertilizer on the tractor-trailer rig he drove. He was employed by Earl Brown, doing business as Brown Trucking (hereinafter, "Brown"), an operation with fewer than three employees, and thus not required to pay, or insure against, a workers' compensation liability. N.C.G.S. §§ 97-2 (1), 97-93 (a). Brown leased the truck to L.J. Rogers, Jr. Trucking Inc., (hereinafter "Rogers"), and plaintiff operated the vehicle under Rogers' certificate from the Interstate Commerce Commission (ICC). The lease was oral, and subject to a "gentleman's agreement" that Brown could haul "personal loads" without splitting the gross revenues with Rogers, as was done when Rogers owned the load, although occasionally Brown paid nominal rent for use of the trailer belonging to Rogers. Plaintiff was picking up such a "personal load" for Brown (for Brown's uncle's use) when he was injured.
It has been the well established law of this jurisdiction — and in virtually all of the States until abrogated by statute in recent years in some 19 of them — that the ICC certificate holder is liable for compensating a driver injured while operating a vehicle under its certificate. Brown v. Bottoms Truck Lines,227 N.C. 299, 42 S.E.2d 71 (1947). On public policy grounds, a franchise carrier enabling the operation of a truck with its ICC certificate is not allowed to contract away legal responsibility for damage it may do. The driver operating the vehicle, fulfilling the ICC carrier's contracts, and dealing with others as the ICC carrier's agent, is, for compensation law purposes, as well as transactions with third parties, the employee of the ICC carrier. Watkins v. Murrow, 253 N.C. 652, 658-59, 118 S.E.2d 5
(1961). ICC regulations currently provide that the certificate holder, with narrow exceptions, takes "exclusive control" of and "complete responsibility" for the operation of its leased vehicles. 49 CFR § 1057.12 (c).
The principals of both of the defendant employers had personal knowledge of the accident. In conversation with the plaintiff, Mr. Rogers contended that the liability was Brown's, since the load involved was one of Brown's "personal loads." Plaintiff filed a claim and requested a hearing (with I.C. Forms 18 and 33) in September of 1993, and named Brown — only — to fulfill the condition precedent imposed by N.C.G.S. § 97-24. When the matter came on for hearing on April 14, 1994, it quickly "became apparent [to the hearing deputy] . . . that all parties necessary to the adjudication of this claim were not present . . .", and proceedings were halted until defendants Rogers and Travelers Insurance Company were joined as defendants. In light of the public policy and ICC regulations referenced above, it is clear that the law will not permit an ICC certificate holder to escape liability for damage caused by its leased truck based on the grounds advanced by Rogers, characterized as "dual employment" by Professor Larson, i.e., with compensation liability divided by consecutive tasks performed separately for each employer. By law, if not fact, plaintiff's was a "joint employment," with simultaneous liability for injuries during services rendered for both. See N.C.G.S. § 97-51; Larson, Law of Workers' Compensation, § 48.40.
Since Rogers was not named in a claim filed with the Industrial Commission within two years after the accident, the Commission has not acquired jurisdiction to order Rogers to pay compensation unless its relationship with Brown was such that a claim naming Brown serves that purpose. Actual notice to the employer is not alone sufficient. Reinhardt v. Women's Pavilion,102 N.C. App. 83, 85-86, 401 S.E.2d 138 (1991). Plaintiff argues, alternatively, that the two firms were in a partnership, or that Rogers and its carrier should be estopped from denying coverage because the "cab card" did "not accurately show who the operator" of the vehicle was.
The rules for determining whether a partnership relationship exists are specified by statute. N.C.G.S. § 59-37. It provides, in pertinent part, that, "The sharing of gross returns does not itself establish partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." N.C.G.S. § 59-37 (3). While sharing in profits raises an inference of partnership, it is clear that the former rule applies to this situation. The testimony of Mr. Brown and Mr. Rogers indicates that the latter received either 20% or 30% of the gross return on each load, depending on whether a Roger's trailer was used, and in that Mr. Brown retained the rest to pay the expenses of the trip — including wages for the driver, fuel and maintenance — and retained the rest for his profit. Mr. Rogers had no personal knowledge or interest in Brown's overhead. See T. pp. 120, 162-63. Apparently, Brown had no knowledge or interest in the cost of Rogers' loads. ICC regulations provide that the "amount to be paid [per a truck lease] may be expressed as a percentage of gross revenue . . ." 49 CFR § 1057.12 (d).
There is no evidence that Rogers fraudulently concealed or misrepresented its involvement with the operation of plaintiff's truck. Rogers violated ICC regulations by failing to have paperwork on Ashley's truck — either a written lease or another statement stating that it "operated" the vehicle — but plaintiff knew he was driving under Rogers' name. 49 CFR § 1057.11 (c) (2). Its name was on the side of the truck. T. pp. 61 and 75. Plaintiff testified that he was hauling a Rogers' load on the date of the injury. T. p. 32. The bill of lading for the load plaintiff was handling when he was hurt listed Rogers as the carrier. Tr. Exh. p. 6. Mr. Rogers and plaintiff discussed which employer had compensation liability within two months of the accident. T. pp. 36 and 37. An ICC carrier and truck lessor may agree that the latter will carry the workers' compensation insurance. Watkins, at 660-61. An employer's contention that it is not liable for compensation does not support estoppel. Perdue v. DanielInternational, 59 N.C. App. 517, 296 S.E.2d 845 (1982), cert.denied, 307 N.C. 577, 299 S.E.2d 647 (1983).
This case presents a troubling but anomalous situation. Our review of the national treatise on workers' compensation and the reported state and federal cases involving ICC truck accidents (wherein both the owner of the vehicle and the ICC certificate holder are frequent tort defendants) fails to reveal a single instance when a plaintiff was in a similar posture. See e.g.,Atlantic Truck Lines, Inc. v. Kersey, 387 So.2d 411
(Fla.Ct.App., 1980). Normally, the plaintiff will claim against the entity whose name appears on the truck; or the owner, who otherwise would be liable (in North Carolina, per N.C.G.S. § 97-51), will inform the claimant about coverage; or, counsel will determine the ICC carrier's status as an employer.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. L. J. Rogers, Jr., Trucking, Inc., (hereinafter referred to as "Rogers Trucking") is a common carrier regulated by the Interstate Commerce Commission (ICC) which operates a trucking business in Mebane, North Carolina. Rogers Trucking operated its own trucks and also leased trucks to carry freight. By law, Rogers Trucking retained exclusive control and complete responsibility for the operation of its leased vehicles.
2. Earl Brown was a farmer engaged in agricultural business in Alamance county. He had two trucks which he operated as the business Earl Brown Trucking (hereinafter, Brown Trucking). Since these trucks were not used at all times in connection with his farming business, he sought an arrangement whereby his trucks could be leased to Rogers Trucking so as to keep the trucks and their drivers busy. The lease of Earl Brown's two trucks to Rogers Trucking was by an oral agreement. Earl Brown obtained an apportioned license tag for his trucks from the Department of Motor Vehicles. The apportioned licensed cab card for the truck driven by the plaintiff, Lonnie B. Ashley, indicated that the operator (lessee) of the truck was Earl Lester Brown and the owner (lessor) was left blank. North Carolina Department of Motor Vehicles records show that Earl Lester Brown's truck was leased to L. J. Rogers, but the cab card did not indicate to whom the truck was leased, and does not have a blank to list the insurance carrier. The truck displayed placquards indicating it was operated in the name of Rogers Trucking, and that name was plainly visible on the side.
3. Lonnie B. Ashley applied with Rogers Trucking for employment as a truck driver in November of 1991. Mr. L. J. Rogers, Jr., President of the L. J. Rogers, Jr. Trucking, Inc., referred Mr. Ashley to Earl Brown, thinking that Earl Brown would need a driver for his truck and might employ him.
4. Earl Brown Trucking and Rogers Trucking employed Lonnie B. Ashley as the driver of Brown Trucking's vehicle leased to Rogers Trucking, and Mr. Ashley was operating this truck on January 31, 1992.
5. The terms of the oral lease agreement between Earl Brown and Rogers Trucking provided that the Earl Brown truck would pull a Rogers Trucking trailer to haul the loads of Rogers Trucking. Brown Trucking would be paid 70% of the gross freight revenue, with 30% of the gross revenue going to Rogers Trucking. Out of his 70%, Brown paid his operating expenses, including payment to his driver of 20% of the gross revenue. From time to time, however, Earl Brown used his truck to haul his own loads, or to haul loads for his uncle, Billy Brown, who operated Brown's Farm Service, selling feed, seed, lime and fertilizer. Billy Brown also was involved as a partner with Earl Brown in a farming operation. It was further agreed that when Earl Brown's truck would haul his personal loads or loads for Billy Brown, the defendant Rogers Trucking would not receive a share of the revenue, and in fact would often not even know where the loads were picked up or delivered. Sometimes these loads would be hauled using a Rogers Trucking trailer, and Earl Brown might pay some nominal trailer rent, or the trailer rent might be waived. The evidence does not establish that the parties strictly adhered to contractual arrangements with respect to personal use by Earl Brown of his truck, but the evidence by its greater weight does indicate that it was normal procedure, anticipated by the agreement between Earl Brown and L. J. Rogers, Jr., for the truck to be used by Earl Brown for personal loads, or loads in which he had some interest.
6. Earl Brown, doing business as Earl Brown Trucking, regularly employed only two freight truck drivers. Mr. Brown also had agricultural employees. One employee, Ronnie Laws, drove a fertilizer spreader truck used by Mr. Brown in his farming operation, and from time to time this fertilizer truck would be utilized to spread fertilizer on the lands of paying customers. However, Ronnie Laws was not involved in operating Earl Brown Trucking vehicles under lease to Rogers Trucking, or otherwise. He never drove a truck that was leased to Rogers Trucking, except for the single occasion when he assisted Mr. Brown in returning his truck from Clinton, North Carolina, on the day the plaintiff was injured and unable to drive. Laws was not licensed through the Department of Motor Vehicles to operate the truck in interstate or intrastate commerce. He was not an employee of Earl Brown Trucking at the time of the plaintiff's injury by accident. The employment known as Earl Brown Trucking had only two employees as of January 31, 1992.
7. On January 31, 1992, the plaintiff, while strapping down a load of fertilizer on his truck, fell off of the trailer. As a result of said fall he sustained serious injury to his right foot. Plaintiff was transported by ambulance to the hospital, and was subsequently brought back to Alamance County by Mr. Brown. Following the plaintiff's injury by accident, he received treatment at the VA Hospital in Durham and was out of work for a period of approximately six and one-half months.
8. On September 14, 1993, the plaintiff filed a Form 18 with the North Carolina Industrial Commission alleging that "Earl Brown and Brown Trucking" were responsible, as employer (s), for workers' compensation due because of his injury by accident on January 31, 1992. No other Form 18 was ever filed as a result of the January 31, 1992 injury by accident.
9. On September 14, 1993, the plaintiff filed a Form 33, Request that the Claim be Assigned for Hearing, with the North Carolina Industrial Commission requesting a hearing on his claim against "Earl Brown and Brown Trucking." On April 14, 1994, a hearing commenced in Graham, North Carolina, with respect to plaintiff's claim against Earl Brown and Brown Trucking. As a result of testimony given by the plaintiff at that hearing, Deputy Commissioner Scott Taylor determined that there were other parties who were necessary to the adjudication of plaintiff's claim, namely, L. J. Rogers, Jr., Inc. and its workers' compensation carrier, Travelers Insurance Company, and Brown's Farm Service, which was non-insured. On April 28, 1994, Deputy Commissioner Taylor entered an Order joining L. J. Rogers, Jr. Trucking, Inc., Brown's Farm Service, and Travelers Insurance Company as defendants to the action, and further ordered that the case was to be reset in Graham for a hearing de novo.
10. The case came on for hearing on August 10, 1994 in Graham. After a pre-hearing conference with the parties, it was determined that Brown's Farm Service was not a necessary or proper party to the case and it was dismissed. However, it was determined that L. J. Rogers, Jr. Fertilizer Company and thus insurance carrier, Travelers Insurance Company, were proper defendants. The case was then reset for hearing for September 19, 1994.
11. There is no evidence that L. J. Rogers, Jr. Fertilizer Company had any association with Brown Trucking at the time of plaintiff's injury by accident on January 31, 1992 other than through their lease agreement. L. J. Rogers, Jr. Fertilizer Company was properly dismissed from this action at the hearing by the Deputy Commissioner.
12. On the date of the accident, the plaintiff commented to Earl Brown that he hoped he (Mr. Brown) had good insurance. Mr. Brown replied to the plaintiff that he did not have any insurance. Plaintiff knew as of January 31, 1992 that Earl Brown did not have workers' compensation insurance to compensate him for injuries he had sustained in the accident.
13. Following the injury, the plaintiff spoke with L. J. Rogers, and told Mr. Rogers that he was being treated for his injuries by the Veterans Administration Hospital. The plaintiff did not ask L. J. Rogers, Jr. or Rogers Trucking for any assistance with his medical expenses, or for any compensation while he was out of work, and he was not offered any such assistance or compensation by Rogers Trucking. Neither Rogers Trucking, nor any of its officers or agents, made any representations to the plaintiff concerning his medical care or compensation as a result of his on-the-job accident.
14. Rogers Trucking is covered for workers' compensation insurance by Travelers Insurance Company. Rogers Trucking did not file a Form 19 with the North Carolina Industrial Commission as a result of plaintiff's accident because Rogers Trucking did not dispatch the load, and the load was for Brown's Farm Service. Rogers Trucking was not paid any share for that load, nor a trailer rental fee. Nonetheless, the load was hauled in the truck bearing the placquards of Rogers Trucking, and under the authority of Rogers Trucking, with the bill of lading for the load indicating L. J. Rogers Trucking as the carrier.
15. When Earl Brown received word that plaintiff had been injured and that it would be necessary for him (Mr. Brown) to come to Clinton to pick up his truck, he signed for the load by signing the bill of lading which indicated L. J. Rogers Trucking as the carrier.
* * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. On January 31, 1992, the plaintiff sustained an injury to his right foot when he fell off of a flatbed trailer while strapping down a load of fertilizer. Plaintiff's injury arose out of and in the course of his employment. N.C.G.S. § 97-2 (6).
2. Plaintiff was employed by Earl Brown, doing business as Brown Trucking. On the date of the injury by accident, Brown Trucking employed only two employees, and thus was not subject to the provisions of the Workers' Compensation Act. The plaintiff was also an employee of L. J. Rogers, Jr. Trucking Company while operating the truck under the Interstate Commerce Commission Certificate of Rogers Trucking. N.C.G.S. § 97-2 (1); Watkins v.Murrow, 253 N.C. 652, 658-59, 118 S.E.2d 5 (1961).
3. Lonnie B. Ashley did not file a claim within two (2) years of the accident against L. J. Rogers, Jr. Trucking Company. The plaintiff's only claim was filed against Earl Brown and Brown Trucking, who is not subject to the provisions of the Workers' Compensation Act. There is no evidence that the plaintiff was misled by defendant L. J. Rogers, Jr. Trucking Company in any manner that would support estoppel, or bar that defendant from raising the defense that plaintiff failed to timely make a claim against it. Plaintiff's claim is barred by the provisions of N.C. G.S. § 97-24 (prior to 1994 amendments).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. The plaintiff's claim must be, and hereby is, DENIED
2. Each side shall pay its own costs.
 S/ ________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ COY M. VANCE COMMISSIONER
JRW/jss/tmd 5/9/95