58 So.2d 698 (1952)
GEFFREY
v.
LANGSTON CONST. CO.
Supreme Court of Florida, Special Division A.
March 11, 1952.
Rehearing Denied May 28, 1952.
T. Paine Kelly, Jr., and Macfarlane, Ferguson, Allison & Kelly, all of Tampa, for appellant.
M.W. Wells and Maguire, Voorhis & Wells, all of Orlando, for appellee.
TERRELL, Justice.
This was an action for personal injuries brought by appellant as plaintiff against appellee as defendant. The declaration alleged that the plaintiff was engaged in the business of selling plate glass, that about the first of March, 1949, it hired a crane and operator from defendant to unload a quantity of plate glass from a gondola *699 freight car, that the crane was defective, that James L. Poole, Jr., an employee of the plaintiff, did not know of its defective condition and while in the process of lifting one of the crates of plate glass from the gondola car the crane failed because of its defective condition, causing the crate to fall on James S. Poole, Jr., inflicting mortal injuries from which he died.
There was a plea of not guilty and a spate of special pleas which denied every material allegation of the declaration. The special pleas also charged Poole with contributory negligence in operating the crane and alleged that it was a simple mechanism free from patent defects. On these issues a trial resulted in a verdict for the plaintiff. A motion for new trial was granted. This appeal is from the order granting the motion for new trial wherein the court points out that "having determined that the motion for new trial should be granted, it is not deemed proper that any final judgment be entered in favor of plaintiff." In this aspect the order granting the motion for new trial was in effect a final judgment.
The point for determination is whether or not the trial court committed error in granting the motion for new trial. The answer to this question requires a critical examination of the evidence.
In granting the motion for new trial, the court found in substance: (1) There is insufficient proof that the machine was defective when delivered to plaintiff. (2) The verdict was contrary to the law and the evidence. (3) Plaintiff did not prove by a preponderance of the evidence that defendant knew or by the exercise of reasonable care could have known of the defect in the machine. (4) Plaintiff did not prove by a preponderance of the evidence that the crane failed by reason of its defects.
It is quite true that as to bailed instrumentalities some courts approve a rule to the effect that a bailor may not generally be held liable for injuries suffered by the bailee or a third party on account of defects in the bailed instrument, if not in its nature dangerous, or if the defect arises after the delivery of the instrument to the bailee, or if the defect could not have been discovered by the bailor in the exercise of due care at the time the instrument was delivered. See 12 A.L.R. 774, and 131 A.L.R., page 846 for annotation and citation of authorities supporting this rule.
There are no doubt factual considerations that would compel the application of this rule but there is no basis for its application in the case at bar. In the first place, this court is committed to the doctrine that a crane in operation is inherently dangerous and may lead to mischief. Putman Lumber Company v. Berry, 146 Fla. 595, 2 So.2d 133. In the second place, by holding as he did, the trial court bypassed all reasonable deductions that may be drawn from the evidence which are particularly applicable in cases of this kind and which if not invoked would often defeat a meritorious recovery for personal injuries.
This court is committed to the rule announced in Seaver v. Stratton, 133 Fla. 183, 183 So. 335; Edwards v. Miami Shores Village, Fla., 40 So.2d 360, and similar cases to the effect that the granting of a motion for new trial is addressed to the sound judicial discretion of the trial court and will not be disturbed on appeal unless a clear abuse of discretion is shown. It is also the rule that a trial court should not set aside a verdict and grant a new trial where the only issue involved is the sufficiency and probative value of the evidence, when there is substantial, competent evidence in the record to support the verdict and the only thing that will be accomplished by a new trial will be to have another jury try the case.
Carefully inspected it will be noted that the sole ground for the order granting the new trial was the insufficiency of the evidence to support the verdict. Since this is the case we are confronted with the factual inquiry into what factors caused the crate of plate glass to fall and crush the deceased. Plaintiff contends that it fell because of defects in the crane which were known or in the exercise of reasonable care could have been known to defendant. Defendant contends on the other hand that the crate fell because of defects in the crane which it was not charged with notice of and that the evidence failed to reveal any negligence on its part.
*700 The evidence shows that the crane was mounted on a truck and that it was handled by an agent of defendant. It consisted of a boom and drums equipped with manually operated handles and winches to hold the load when raised from its resting place. There was a lifting cable anchored to the drum which ran to the sheave at the end of the hook, thence to the pulley or block to which the hook was attached. The cable continued through the pulley and back to the sheave and down to the anchor on the pulley where it was held in place by one or more U bolts or cable clamps. If the cable broke while the load was in the air or if the cable clamps gave way or the cable slipped through them, the load would fall to the floor instantly.
The gondola freight car in which the plate glass was loaded was placed on the siding opposite the plant of appellant. The plate glass was packed in crates that weighed about 3000 pounds each. On the morning of March 1, 1949, the agent of defendant arrived with the crane to unload the plate glass and reported to Mr. Poole who with a crew of four directed the unloading. The truck was placed at the side of the freight car with the boom over the crate of glass to be unloaded. A chain would then be placed around the crate and attached to the hook by which the crate was raised above the level of the car and placed on the ground. Six crates were unloaded without accident. When the seventh crate was from one to two feet high it suddenly dropped to the floor, careened to the side of the car, caught Mr. Poole against it and crushed him to death. Two witnesses testified that the crate fell when the end of the cable broke loose from the anchor, slipped through the pulley, whipped through the sheave on the boom and hit the wall of the building beside the truck. Other witnesses testified as to what happened to the block and pulley, the cable and the cable clamp, but there is little difference in their conclusions. It was shown conclusively that the chain was still fastened around the crate in the manner that it was placed prior to the accident.
Expert witnesses testified that cable clamps in heavy machinery would work loose and cause the cable to slip if they were not looked after and tightened properly. The testimony also shows that the original clamps put on the crane at the time it was constructed were in use when the accident occurred. The same witness testified that he had no idea when those on the crane were last inspected but that it was his practice to test them at periodic intervals. There was no showing that the crane was inspected prior to renting it to appellant, though it was known that it was to be used for heavy lifting and that heavy machinery would work loose and cause cable to slip if not looked after and tightened properly.
There is some conflict in the evidence. One witness testified that when the crate was lifted it tended to fall away from the end of the boom, thus creating a slack in the cable making the crate keel over on Mr. Poole. The same witness also testified that the cable did not slip through the clamps, but viewed from the standpoint of the whole picture, there was ample reason for the jury to reject this evidence since it was contrary to human experience and contrary to the physical facts as revealed by the preponderance of the evidence.
Such in summary was the evidence presented to the jury. It is perfectly evident that the crate dropped because the cable gave way. Whether it broke or the clamp bolts worked loose and let it slip through is not disclosed but all these physical facts were before the jury and from them it was their province to determine the cause of the accident. That Poole was dead and was crushed to death between the crate of glass and the side of the box car is certain. It is also certain that his death resulted from the fall of the crate and that it fell because the cable either broke or slipped through the clamps. It is shown that the crane had been used a long time without inspection. From this and other factors present it was for the jury to determine whether the cable was worn and broke from long use or whether it slipped past the clamp because the bolts were loose, and whose negligence was responsible for this. In such cases it is often impossible to produce oral evidence that an instrumentality *701 like that used here was in safe condition when it lifted the first or second crate but was not so when it lifted the others. In other words the minute proof of unsafe condition is not required. For this reason the jury is permitted to draw reasonable deductions from the physical facts presented and from them determine whose negligence was responsible for the death. There must of course be ample physical and other facts proven to show that the death or injury was negligent.
We think that such facts were present in this case and that the trial court committed error in granting the motion for new trial. His judgment is accordingly reversed with directions to enter final judgment on the verdict.
Reversed.
SEBRING, C.J., MATHEWS, J., and MURPHREE, Associate Justice, concur.