327 So.2d 95 (1976)
Robert BURTON et al., Appellants,
v.
DIAMOND SAND AND STONE COMPANY and Continental Insurance Company, Appellees.
No. 74-1091.
District Court of Appeal of Florida, Second District.
February 20, 1976.
Patrick E. Geraghty, of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants.
G. Hunter Gibbons, of Dart, Dickinson, O'Riorden, Gibbons & Quale, Sarasota, for appellees.
HOBSON, Judge.
The final judgment appealed was rendered after trial on the merits of the crossclaims of appellants and appellees against each other on the question of coverage under their respective insurance policies. The plaintiff's suit for damages was a wrongful death action against the parties to this appeal. The crossclaims were severed from the wrongful death claim for a separate trial.
The final judgment found that Canal Insurance Company was estopped to deny coverage under its policy issued to Pete Miller and that the Canal policy provides primary coverage with regard to the accident which is the subject matter of the plaintiff's complaint. The final judgment further found that Continental Insurance Company's policy No. L4283964 provides secondary coverage; that Continental's policy No. L4283964 provides coverage equal to the maximum amount set forth in said policy; and that no coverage was provided for this accident by a second Continental policy, No. L4293071.
We affirm the final judgment in all respects with the exception of the premature finding that the Canal policy provides primary coverage and Continental's policy No. L4283964 provides secondary coverage.
Appellant takes the position that the trial court committed error in failing to determine whether or not Robert Burton, the driver of the truck on the date of the accident, was an employee, statutory employee or borrowed servant of Diamond Sand and Stone Company. Robert Burton was hired and paid by Pete Miller and the truck involved in the accident was owned by Pete Miller. If Robert Burton was in fact a borrowed servant, employee, or statutory employee of Diamond Sand, Diamond Sand's policy with Continental would provide primary coverage based on the doctrine of respondeat superior, while the policy of Pete Miller with Canal would provide secondary coverage based on the vicarious liability as owner of the truck. *96 See Hutchins v. Campbell, Inc., Fla.App.2d 1960, 123 So.2d 273, and Hertz Corporation v. Ralph M. Parsons Company, 5th Cir., 419 F.2d 783 (1969).
Although Pete Miller hired Robert Burton and was paying his salary, the appellants contend that Robert Burton can still be a borrowed servant of Diamond Sand. The general rule is set out in 21 Fla.Jur., Master and Servant, § 69, as follows:
"It is competent for an employer to loan out one of his servants to a third party. If that third party has complete control over the servant and directs his conduct at all times, he will be held responsible for the servant's derelictions even though the original employer is still paying his salary."
It is appellants' position that under the facts of this case Diamond Sand had complete control over the conduct of Robert Burton in regard to the operation of the truck. This, they say, can be established by the facts that on the date of the accident the truck was under lease to Diamond Sand, was being operated in the furtherance of Diamond Sand's business, was operated pursuant to Diamond Sand's Public Service Certificate, and Robert Burton was carrying out the instructions of the dispatcher for Diamond Sand who had told him where to deliver the load.
On the other side of the coin, the lease agreement between Pete Miller and Diamond Sand places all of the obligations and liabilities on Pete Miller. Appellants, however, argue that the lease is in contravention of the rules and regulations of the Florida Public Service Commission. The rules of the Florida Public Service Commission provide under Chapter 25-5.17(2)(e) that each lease of a motor vehicle must comply with the following:
"All vehicle leases shall provide that the lessee-carrier assume full and complete responsibility and liability for the operation of the leased vehicle and for all cargo transported thereon during the term of the lease."
In Simmons v. King, 5th Cir., 478 F.2d 857 (1973), the court held that the ICC regulations contained in 49 C.F.R., § 1057.4(4) which provides that leases of equipment "shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement ..." have supreme controlling significance. The lease involved in Simmons, supra, conformed to the mandate of the above-quoted regulations of the ICC, whereas in the instant case the lease was in contravention of the Florida Public Service rule.
The court in Simmons stated at page 865:
"The legislative-administrative travail behind the ICC regulations on trip leases reflects the importance attached by the Congress and ICC to the economic necessity for such short term leases and why it is critical that ICC regulations and the leases mandated by them have supreme, controlling significance. They grew out of the decade long ex parte proceeding No. MC-43 pursuant to the authority contained in Section 204, 49 Stat. 546, as amended, 49 U.S.C.A. 304. The arduous road has been often traced. Agricultural Transportation Assoc. of Texas v. King, 5 Cir., 1965, 349 F.2d 873. See, Agricultural Transportation Assoc. of Texas v. King, supra at 881, 882 and many others. Many factors were behind this legislative-administrative determination. Many were economic to avoid costly dead hauls. But many were to correct abuses that had arisen under often fly-by-night arrangements with consequent damage to the development and maintenance of a sound transportation system and to the public interest from a helter-skelter operation of thousands of unregulated vehicles on the highways as a menace to safety.

*97 "One way to assure responsibility was to impose on the certificated carrier the full responsibility for the entire operation of temporarily leased equipment, whether owner-driver, or otherwise. The regulation .. . and the mandated lease provision are valid."
The court went on to hold that the driver of the leased equipment became a statutory employee of the lessee.
As noted above, the trial court did not rule on whether or not Robert Burton on the date of the accident was an employee, statutory employee, or borrowed servant of Diamond Sand and Stone Company. This question must be answered prior to the determination of which crossclaimant was primarily liable for the alleged negligence of Robert Burton in the operation of the truck at the time of the accident.
The final judgment appealed is affirmed in part and reversed in part and remanded for further proceedings.
McNULTY, C.J., and SCHEB, J., concur.