518 So.2d 395 (1987)
CRANE RENTAL OF ORLANDO, Inc., Appellant,
v.
Ford S. HAUSMAN, Appellee.
No. 86-1327.
District Court of Appeal of Florida, Fifth District.
December 31, 1987.
Charles Evans Davis of Fishback, Davis, Dominick & Bennett, Orlando, for appellant.
Steven R. Bechtel, Orlando, and Law Offices of Gaylord A. Wood, Jr., Ft. Lauderdale, for appellee.
*396 ORFINGER, Judge.
Crane Rental appeals from a final judgment in which the trial court found that its self-propelled cranes were not motor vehicles, as defined by Florida law, and therefore subject to ad valorem taxes. We affirm.
Crane Rental (Crane) owns and operates 15 self-propelled cranes. In 1985, the Orange County Property Appraiser (Appraiser) assessed ad valorem taxes on the cranes as personal property. Crane refused to pay the taxes, on the basis that the cranes were motor vehicles and therefore exempt from ad valorem taxes under Article VII, section 1(b), of the Florida Constitution.[1] Crane appealed to the Property Appraisal Adjustment Board, pursuant to section 194.011, Florida Statutes. The Board ruled that the carriers upon which the cranes were affixed are motor vehicles and, as such, were not subject to ad valorem taxes. However, the cranes were found to be subject to ad valorem taxes because they were equipment "not part of the motor vehicle."
The Appraiser then brought an action in circuit court under section 194.036, Florida Statutes. The Appraiser contended that the entire crane units were subject to ad valorem taxes as personal property. Crane filed a counterclaim, contending that the entire crane units were motor vehicles and therefore exempt from ad valorem taxation. After considering testimony and other evidence, the trial court issued an order of final judgment setting forth conclusions of law and fact. The trial court found that although the cranes were self propelled, the purpose of the propulsion was to enable the cranes to transport themselves to perform work at construction sites. The court determined that the cranes were neither designed nor used to transport persons and properties, and that any use over the highways was incidental to the main purpose for which the cranes were designed, i.e., for use in construction. Finally, the court found that the cranes were designed on integral chassis as one tool and are not sold in separate pieces. The court concluded that the cranes were not motor vehicles as defined by law and therefore were subject to ad valorem taxes as personal property. From this final judgment Crane appeals and we have jurisdiction.[2]
We begin our analysis by recognizing that all real and personal property in this state is subject to taxation unless expressly exempted by law. § 196.001, Fla. Stat. (1985). Exemptions to the taxation of personal property are to be narrowly construed against a party claiming a grant of exemption. Volusia County v. Daytona Beach Racing and Recreational Facilities District, 341 So.2d 498 (Fla. 1976), appeal dismissed, 434 U.S. 804, 98 S.Ct. 32, 54 L.Ed.2d 61 (1977); Adams Construction Equipment Co. v. Hausman, 472 So.2d 467 (Fla. 5th DCA 1985). Section 1(b), Article VII, of the Florida Constitution provides for an exemption to ad valorem property taxes for "motor vehicles ... as defined by law." Id. Thus, the narrow issue before us is whether the vehicles owned by Crane are motor vehicles as defined by law, and thus exempt from ad valorem taxation.
In looking to a legislative definition of motor vehicle, we find that the term is defined in numerous places throughout the Florida Statutes. See § 316.003(21), Fla. Stat. (1985) ("motor vehicle" is "[a]ny vehicle which is self-propelled ..."; § 316.003(76), Fla. Stat. (1985) (vehicle is defined as "[e]very device, in, upon, or by which any person or property is or may be transported or drawn upon a highway... ."); § 627.732(1), Fla. Stat. (1985) (under Florida no-fault law, motor vehicle means "any self-propelled vehicle with four or more wheels which is of a type of design and required for use on highways of this state ..."); § 322.01, Fla. Stat. (1985) (motor vehicle is "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from *397 overhead trolley wires, but not operated upon rails ..."). See also § 520.02, Fla. Stat. (1985). These various definitions should be read pari materia.[3] In determining that the motor vehicles owned by Crane were not motor vehicles, the court below relied upon the definition provided in Chapter 320, relating to the licensing of motor vehicles:
320.01 Definitions, general.  As used in the Florida Statutes, except as otherwise provided, the term:
(1) "Motor vehicle" means:
(a) An automobile, motorcycle, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power, but the term does not include traction engines, road rollers, such vehicles as run only upon a track, bicycles, or mopeds as defined in s. 316.003(2).
§ 320.01(1)(a), Fla. Stat. (1985). We agree with the trial court that the legislature did not intend a self-propelled crane to be classified as a motor vehicle for the purpose of exemption from ad valorem property taxes.
The supreme court considered this issue in Forbes v. Bushnell Steel Construction Co., 76 So.2d 268 (Fla. 1954). In that case, the owner of two self-propelled cranes was assessed an ad valorem tax on the cranes as personal property. The parties stipulated in that case that the cranes were designed for exclusive use in construction work, that the vehicles operated over public highways, and were self-propelled by gasoline engines, and that they had been issued certificates of title and license tags. Based on this stipulation, the trial court declared that the cranes were not subject to ad valorem taxation. The tax assessor appealed and the supreme court reversed:
It seems to us that if we affirm the decree brought here for review the rule will have been established that any equipment mounted on wheels equipped with pneumatic tires that is capable of being self-propelled on the highways by means of a gasoline engine is a motor vehicle, and therefore immune from ad valorem taxation under our laws, even though the equipment is designed exclusively for construction work and is used for this purpose.
76 So.2d at 269. The Forbes court noted that the record was silent as to whether the crane's operation on the highways was primary or incidental to the "main and ordinary uses" of the vehicles. Furthermore, there was no evidence concerning the design of the cranes, i.e., whether they were permanently affixed to a chassis or mounted on separate vehicles. The court declared that some evidence pertaining to these considerations was necessary to determine whether the cranes were motor vehicles for the purpose of ad valorem taxation.
In the proceeding below, the Appraiser introduced evidence relevant to the factors discussed by the supreme court in Forbes. The primary purpose of these vehicles is for their use as cranes in construction. These vehicles are not used for the primary purpose of transporting persons or property. Although the cranes transport a driver, and some of the cranes also carry a crane operator, section 320.01(12) excludes the driver from the definition of passenger. The cranes are capable of transporting buckets, additional boom extensions, and other equipment. However, these items are only appurtenant to the use of the vehicles as cranes. Clearly, the vehicles are not used for the primary purpose of transporting and delivering such items to the construction site. Rather, their use of the highways is solely for the purpose of taking them to the construction site where they are used as cranes. Finally, although there was some evidence showing that it was possible to remove the crane mechanism from the chassis, and that the items could be sold separately, we believe that the record supports the trial court's finding *398 that the cranes are designed as one unit, were purchased as such by Crane, and were used as complete integrated units. Thus, we reject any argument that the cranes were equipment mounted upon a motor vehicle which transported them and thus were only subject to a partial assessment. Cf. 1956 Op.Att'y Gen. Fla. 056-314 (October 31, 1956); 1950 Op.Att'y Gen. Fla. 050-144 (March 23, 1950) (vehicle and attached equipment should be considered as separate, depending upon primary use).
Our conclusion that the legislature did not intend these vehicles to be classified as motor vehicles, is further supported by the definition of special mobile equipment in Chapter 316, Florida Statutes:
(49) SPECIAL MOBILE EQUIPMENT.  Any vehicle not designed or used primarily for the transportation of persons or property and only incidentally operated or moved over a highway, including, but not limited to, ditchdigging apparatus, well-boring apparatus, and road construction and maintenance machinery, such as asphalt spreaders, bituminous mixers, bucket loaders, tractors other than truck tractors, ditchers, leveling graders, finishing machines, motor graders, road rollers, scarifiers, earth-moving carryalls and scrapers, power shovels and draglines, and self-propelled cranes and earth-moving equipment. The term does not include house trailers, dump trucks, truck-mounted transit mixers, cranes or shovels, or other vehicles designed for the transportation of persons or property to which machinery has been attached. [Emphasis added].
§ 316.003(49), Fla. Stat. (1985). We believe this expresses the legislature's intent to distinguish machinery that requires the use of public highways to transport itself from motor vehicles, which are used primarily to transport persons or property. See also M.J.S. v. State, 453 So.2d 870 (Fla. 2d DCA 1984) (construction backhoe is not a motor vehicles, as defined by Florida law); 1955 Op.Att'y Gen. Fla. 055-113 (May 31, 1955) (earth moving vehicle mounted on pneumatic tires and used solely for off-highway work not a "motor vehicle").
Finally, Crane argues that because its vehicles were subject to a license tax, that Article VII, section 1(b), of the Florida Constitution prohibits an ad valorem assessment. We find nothing in the constitution or the statutes to compel such a conclusion. Evidence submitted by the Appraiser below shows that the cranes were assessed a license tax under tax class 94 of the Department of Highway Safety and Motor Vehicles tax classifications. Tax class 94 is provided for
Tractor cranes, power shovels, well drillers and other such vehicles, so constructed and designed as a tool and not a hauling unit, used on the roads and highways incidental to the purpose for which designed.
The constitution prohibits ad valorem taxation on those vehicles which are classified as motor vehicles. However, this provision does not prohibit the Department from assessing a license tax on personal properties. The fee paid by Crane is for the privilege of enabling it to use the public highways to transport its cranes to the construction sites where work is performed.[4] This does not mean however that these cranes are motor vehicles and therefore exempt from taxation as personal property. The supreme court has held that a vehicle may still be a motor vehicle under the law, even though it is not licensed as such. Nolan-Peeler Motors v. Wood, 128 Fla. 756, 175 So. 523 (Fla. 1937). Conversely, simply because a vehicle has been assessed a license tax, does not mean that it is a motor vehicle as defined by law. Forbes, 76 So.2d at 270 ("mere fact that the plaintiff has certificates of title and license tags therefor, or that the vehicles are operated upon the highways, is not decisive of the question.")
In summary, we believe that a fair reading of the statutory definitions of "motor vehicle" supports the trial court's findings; Crane's vehicles do not operate on the public *399 highways as motor vehicles for the purpose of transporting property or persons. Rather, they are mobile construction equipment that use the public highways for the purpose of locating from one construction site to another and are therefore personal property and subject to ad valorem taxation. We therefore affirm the trial court's final judgment.
UPCHURCH, C.J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.
This case involves the construction of a provision of the Florida Constitution relating to the taxation of tangible personal property and the following general and specific questions:
Under article VII, sections 1(a) and (b) of the Florida Constitution, if any one item of tangible personal property is subject by law to a state license tax as a motor vehicle, is it exempt from all county ad valorem taxes?
Is a self propelled mobile crane, designed and constructed to be operated on the roads as a tool and not as a hauling unit, a motor vehicle subject to a state license tax and thereby exempt from county ad valorem taxes?
The majority apparently answers both questions in the negative; this dissent would answer both in the affirmative.
Article VII, section 1 of the Florida Constitution provides:
(a) No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law.
(b) Motor vehicles, boats, airplanes, trailers, trailer coaches and mobile homes, as defined by law, shall be subject to a license tax for their operation in the amounts and for the purposes prescribed by law, but shall not be subject to ad valorem taxes.
Read together, these constitutional provisions:
(1) prohibit a state ad valorem tax on tangible personal property;
(2) permit the legislature to provide by general law for the assessment, by a unit of local government, of ad valorem (property) taxes on tangible personal property;
(3) preempt to the state, and mandate, a state license tax on six designated classes or types of vehicular tangible personal property;
(4) authorize the legislature to more specifically define by law items to be included in, or excluded from, these six classes of tangible personal property; and
(5) exempt from all ad valorem taxes all vehicular tangible personal property as is subject to the state license tax.
As to the governmental power to tax tangible personal property the language, purpose, and intent of these constitutional provisions appear to be plain. The state is denied the power to levy ad valorem taxes on tangible personal property but is authorized to impose a license tax on six classes of vehicular tangible personal property. This assures one statewide uniform tax on all motor vehicles which is not based on their value. The state, by law, may authorize subordinate taxing authorities (counties and cities) to levy ad valorem taxes on all tangible personal property except the six classes of vehicular property which are subject to state license taxation. As to tangible personal property, this scheme allocates the governmental taxing power between the state and the lower taxing authorities, gives the state legislative branch authority to define the classes of tangible personal property subject to state license taxation, and prohibits double taxation of any one item of tangible personal property by exempting from ad valorem taxes all tangible personal property subject to state license taxes.[1]
*400 The Florida legislature has implemented this constitutional plan of taxation by defining motor vehicles (the class of vehicular tangible personal property included in this controversy) in section 320.01(1),[2] Florida Statutes, and by imposing a state motor vehicle license tax in section 320.08, Florida Statutes. As defined in section 320.01(1) a motor vehicle includes:
(a) An automobile, motorcycle, truck, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power, but the term does not include traction engines, road rollers, such vehicles as run only upon a track, bicycles, or mopeds as defined in s. 316.003(2).
In addition, in order to administer and enforce the law imposing a license on motor vehicles, the legislature, by section 320.011, Florida Statutes, has authorized the Department of Highway Safety and Motor Vehicles to classify motor vehicles subject to license tax into certain tax class codes for the purpose of providing and applying different rates of tax, and requiring different motor vehicle license plates, on different types of motor vehicles. All of the Department's classification codes differentiate between vehicles on the basis of the weight or length of the vehicle except tax class code 94, which is described by reference to the following specific types of vehicles:
(1) Tractor cranes, power shovels, well drillers and other such vehicles, so constructed and designed as a tool and not a hauling unit, used on the roads and highways incidental to the purpose for which designed.
(2) Motor vehicles, trailers, and semitrailers, equipped with machinery and designed for an exclusive use in the nature of welldrilling, excavation, construction, spraying, and like purposes.
The Department further explains that motor vehicle license plates of tax code class 94[3] are to be
issued only for vehicles so constructed and designed as tools and not hauling units; such as tractor cranes, power shovels, well drillers, etc. But a vehicle designed as a combination tool and hauling unit used to haul a load over the highways or streets requires a regular truck classification plate according to the weight of the vehicle.
At least through World War II, truck chassis were built as somewhat standard universal units with frames, engines, drive *401 trains, rubber tire wheels, etc., which could be fitted with various bodies adapted to haul persons or any type of property. Some such hauled property rested directly on the truck frame or on various truck beds and were separate and independent pieces of tool type machinery or specialized equipment, either temporarily or permanently mounted. Under these circumstances, the truck or vehicle chassis could be subject to a state vehicular license tax and the piece of machinery, whether carried on the truck bed or either temporarily or permanently mounted, had a separate usefulness and value, and could be separately assessed ad valorem taxes. At that point in time, all vehicles fell into the clause in section 320.01(1) as being "used to transport persons or property." Also at that time, it was reasonable, as the Attorney General suggested,[4] that extra equipment and devices not necessary or proper for the motor vehicle's operation should not be considered a part of the motor vehicle and should be subject to county ad valorem taxation so long as such equipment was used only for a secondary, rather than a primary, purpose of the vehicle. Thus, the pump circulating necessary cooling water through the vehicle engine would be part of the vehicle and not subject to ad valorem taxes, but a water pump mounted on the vehicle to pump water for other purposes would not be part of the vehicle and therefore properly subject to ad valorem taxation.
In more recent times, however, advances in technology have complicated the matter substantially. Now, mobile machinery has been designed and constructed with the essential components of the vehicle or carrier and the essential components of tool type machinery so integrated that the whole is effectively one unit with many parts in common (usually the engine or power unit and hydraulic pumps, lines, and controls); if the two are severed, at least one (the vehicle or the tool) would be inoperative and valueless. The vehicle or carrier portion of the whole is no longer a separate, independent, identifiable item that "hauls" a separate identifiable and severable piece of tool type machinery. As to such modern integrated units, the Attorney General's "split-the-baby" approach is not practical or possible. The carrier or undercarriage portion of such integrated units is not designed to haul persons or general property and, without the tool, would be virtually useless. Similarly, the tool, severed from the carrier which gives it mobility, would be stationary and of very limited, if any, use or value. For example, the stabilizers or outriggers essential for use of a crane are incorporated into the lower or carrier portion of the crane. Doubtless, this is the reason the Department of Highway Safety and Motor Vehicles found it necessary to extend the restrictive language of section 320.01(1)(a), Florida Statutes, by promulgating its vehicular tax code class 94 to include such integrated units as "vehicles so constructed and designed as tools and not hauling units." Likewise, it is absolutely no solution to the taxation contest between state license taxes and county ad valorem taxes to attempt to analyze the modern integrated vehicle-tool item in terms of its primary and secondary purpose. Is the primary purpose of a school bus to operate on the highway or to contain children? The answer is "Both," because the alternatives in the question are, in truth and fact, not inconsistent or mutually exclusive of each other; neither of the alternatives can be considered primary and neither secondary. The single objective and purpose of the school bus is to contain and carry children to and from homes and school over the roads and highways. Both its capacity to contain children and to propel itself over highways are essential to its designed function. This is likewise true of a modern integrated mobile tool which is both vehicle and tool. It is one object with two functional aspects each of which is equally essential to accomplish the purpose for which the other, and the whole, is designed, constructed, and used.
Farm tractors and certain other mobile machinery are not defined as motor vehicles *402 for the purpose of the state motor vehicle license tax.[5] Therefore such mobile machinery is subject to county ad valorem taxation. Certainly, as held in Forbes v. Bushnell Steel Construction Company, 76 So.2d 268 (Fla. 1954), if an owner of such an item, though not required to do so, does voluntarily obtain a motor vehicle license tag for it and runs it upon the highway, these two facts would not be determinative or decisive of the question of whether such item was, or was not, in law a motor vehicle not subject to county ad valorem taxation. But that is an entirely different case from one in which the state taxing authority (the Department of Highway Safety and Motor Vehicles) determines that the item is a motor vehicle that is required to have a state motor vehicle license tax. In such latter case, subject only to the Department being legally correct in its determination and assessment, the imposition of the state motor vehicle license tax serves to prohibit the county from legally assessing ad valorem taxes against the same item under article VII, section 1(b), of the Florida constitution.
A variety of such machine tool type vehicles are now being manufactured and are in common usage, such as mobile cranes, ladder trucks, bucket trucks ("cherry pickers"), boom trucks, lift trucks, pole setting trucks, winch trucks, pump trucks, elevator trucks, grinder trucks, mixer trucks, drier trucks, motor vehicles incorporating back hoes ("gradealls," etc.), drilling rigs, pile drivers, testing equipment, jacks, and many other pieces of tool type machinery which are, in fact, permanently fully integrated tool type vehicles made subject to state license taxes under the Department's tax classification code 94.
Further implementing the constitutional plan of taxation, the legislature has provided by general law for the county property appraiser's assessment of ad valorem (property) taxes on certain tangible personal property. Section 192.011, Florida Statutes, directs the county property appraiser to assess all property located in his county. The assessment of tangible personal property is specified in section 192.032(2), Florida Statutes. However, in recognition of the constitutional provision that all motor vehicles and other vehicular tangible personal property that are subjected to a state license tax are thereby exempt from ad valorem taxes, and the corresponding prohibition against double taxation, the legislature in section 192.001(11)(d), Florida Statutes, defines the tangible personal property subject to county ad valorem taxes as follows:
(d) "Tangible personal property" means all goods, chattels, and other articles of value (but does not include the vehicular items enumerated in s. 1(b), Art. VII of the State Constitution and elsewhere defined) capable of manual possession and whose chief value is intrinsic to the article itself... . [emphasis supplied]
The mobile cranes involved in this case are clearly within the class of motor vehicles defined in the Department's tax class code 94 and are thereby made subject to the state motor vehicle license tax. Being a "motor vehicle" subject to a state license tax for their operation on the public highways, such mobile cranes are within the prohibition contained in the last clause of article VII, section 1(b) of the Florida Constitution that they "shall not be subject to ad valorem taxes." Such mobile cranes are also included in "the vehicular items enumerated in s. 1(b), Art. VII of the State Constitution and elsewhere defined" and are thereby expressly excluded from section 192.001(11)(d), Florida Statutes, which defines tangible personal property lawfully subject to county ad valorem taxes.
This case involves a question of statewide great public importance[6] and should *403 be decided by the Florida Supreme Court, but it should first be correctly decided by this court by reversing the determination below.
NOTES
[1] Motor vehicles, boats, airplanes, trailers, trailer coaches and mobile homes, as defined by law, shall be subject to a license tax for their operation in the amounts and for the purposes prescribed by law, but shall not be subject to ad valorem taxes.
[2] Fla.R.App.P. 9.110(a)(1), 9.030(a)(1).
[3] Prinzo v. State Farm Mutual Auto Insurance Co., 465 So.2d 1364 (Fla. 4th DCA), rev. denied, 475 So.2d 695 (Fla. 1985).
[4] According to the Department of Highway Safety and Motor Vehicles 1985 license rate sheet, the license fee for tax class 94 is $36.50, significantly less than the annual license tax of $244.00 to $983.00, depending on weight, assessed for "tractor trucks."
[1] Article VII, section 1(b) of Article VII of the 1968 revision of the Florida Constitution is taken from the more detailed language in article IX, section 13 of the 1885 constitution as amended in 1930. Article XII, section 10 of the schedule of the Florida Constitution, 1968 revision, provides that article IX (and certain other articles) of the constitution of 1885, as amended, not embraced in, and not inconsistent with, the 1968 revision, became statutes subject to modification or repeal as are other statutes. The 1968 Revision Commission, as well as the commentary to article VII of the 1968 revision as contained in volume 26A, page 3 of Florida Statutes Annotated, was of the opinion that all of the material in article IX, section 13 of the 1885 constitution, as amended, is consistent with article VII, section 1(b), of the 1968 revision, and, therefore, under article XII, section 10 of the 1968 revision, the detailed language of old article IX, section 13 became statutory law of the State of Florida. It has not been modified or repealed. Article IX, section 13, Florida Constitution (1885) is, in part, as follows:

§ 13. Motor vehicles subject to single property tax.  Motor vehicles, as property, shall be subject to only one form of taxation which shall be a license tax for the operation of such motor vehicles, which license tax shall be in such amount and levied for such purpose as the legislature may, by law, provide, and shall be in lieu of all ad valorem taxes assessable against motor vehicles as personal property.
[2] This case involves only the question of whether the self-propelled cranes in question are "motor vehicles" for the purpose of being subject to the state motor vehicle license tax imposed by section 320.08, Florida Statutes, as defined in section 320.01(1), and by the Department of Highway Safety and Motor Vehicles pursuant to section 320.011. Therefore, all other statutory definitions of motor vehicles for other purposes, such as those relating to traffic regulation, driver licenses, insurance, etc., are entirely irrelevant to the question in this case.
[3] The Department's tax class code 94 does not relate to some nebulous license tax on non-motor vehicle personal property. There is no constitutional or statutory authority for the Department of Highway Safety and Motor Vehicles to "assess" and levy a license tax on personal property which is not a "motor vehicle" as a "fee" for the privilege of using the public highways.
[4] 1950 Op.Att'y Gen. Fla. 050-144 (March 23, 1950).
[5] Goats are motor vehicles subject to the motor vehicle license tax. See § 320.08(3)(e), Fla. Stat.
[6] Although this case is between an owner of cranes (a taxpayer) and a county property appraiser, the ultimate substantive question is whether the state can impose a motor vehicle license tax on, and a county can assess ad valorem taxes against, the same one item of personal property. The real controversy is between, and the real parties in interest are, the State of Florida and Orange County. The taxpayer is merely caught in the middle because under the constitution and the statutes, no one item of personal property can be a "motor vehicle" subject to the state license tax under section 320.08 as implemented and also at the same time be tangible personal property that "is not a motor vehicle" subject to county ad valorem taxation under section 192.001(11)(d). Query: Will the Department accept the majority opinion in this case as a binding judicial determination that integrated, self-propelled cranes of the type in this case are not subject to the state motor vehicle license tax imposed by section 320.08, Florida Statutes, and can run on the public highways without a state license tag?