527 So.2d 279 (1988)
Frank Randall MANN, Appellant/Cross-Appellee,
v.
PENSACOLA CONCRETE CONSTRUCTION COMPANY, INC., and United States Fidelity & Guaranty, Appellees/Cross-Appellants.
No. 87-126.
District Court of Appeal of Florida, First District.
June 16, 1988.
Rehearing Denied July 11, 1988.
Lefferts L. Mabie and Charles J. Kahn, Jr. of Levin, Warfield, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Pensacola, for appellant/cross-appellee.
Charles L. Cetti of Cetti, McGraw & Bearman, Pensacola; and Michael E. Smith of Harrell, Wiltshire, Stone & Swearingen, Pensacola, for appellees/cross-appellants.
SMITH, Chief Judge.
This is an appeal and cross-appeal from a final judgment awarding Mann damages for injuries he sustained as a result of the operation of a crane owned by Pensacola *280 Concrete Construction Co., Inc. (Pensacola Concrete). The jury returned a verdict finding the crane operator, Donald Moore, sixty percent negligent and Mann forty percent negligent. The jury also found that Commercial Coatings, the employer of Moore and Mann, had not leased the crane for valuable consideration from the crane owner, Pensacola Concrete. We affirm.
Mann worked for Commercial Coatings; his supervisor was Donald Moore. James Murphy, Mann's employer and owner of Commercial Coatings, arranged with Robert Harris, owner of Pensacola Concrete, to use Pensacola Concrete's crane. On the day of the accident, Moore drove the crane from Pensacola Concrete's yard to Commercial Coatings' construction site. The crane was being used to raise bundles of roofing tin to the top of a new building, with Moore operating the crane and Mann using a sling at the end of the crane hook to secure the loads of tin to be lifted. During a lull in the work, Mann reached up and began doing pull-ups on the cable. Then he swung his legs straight out and up so that he was holding himself upside down. At that time, the crane engine was still running, and Moore put the crane into motion. Losing his balance, Mann locked his legs around the ball, while the cable continued to move upward with Mann holding on to it. According to Mann, he did not want to go for a ride, and yelled at Moore to lower the cable. Although the crane was moving slow enough for Mann to jump to the ground at some point, he testified that he thought the safest thing to do would be to hold on and wait for Moore to lower him back to the ground.
Moore testified that he assumed that Mann was "playing around," and wanted to go for a ride when he grabbed the cable with an expectant smile on his face; that is why Moore put the crane in gear and began lifting the crane hook. Moore testified that he watched Mann the entire time, and never saw him yell or otherwise indicate that he wanted to get down. When the boom on the crane reached the limit of its extension, making contact with the ball, the cable snapped, dropping Mann to the ground below, with the ball falling on top of him and causing serious injuries.
We begin our discussion with the issues raised on the cross-appeal, noting at the outset that this case is before us for the second time. See Mann v. Pensacola Concrete Construction Co., Inc., 448 So.2d 1132 (Fla. 1st DCA 1984), rev. den., 461 So.2d 115 (Fla. 1984) (Mann I). In its cross-appeal, Pensacola Concrete, citing and relying on Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966), asks this court to reexamine our decision in Mann I, and to rule that Pensacola Concrete is immune from tort liability under the circumstances presented here, that is, where its crane had been furnished to Mann's employer for use on a construction job, and Mann was injured solely as a result of the negligent use of the crane by a fellow employee on that job. Pensacola Concrete argues that the crane in this case should be treated as if owned outright by Mann's employer, thus providing a shield of immunity for Pensacola Concrete, notwithstanding its status as the actual owner of the dangerous instrumentality.
We find no basis upon which to alter our previous ruling as urged by Pensacola Concrete. Accordingly, we reaffirm our previous holding in Mann I that where no lease exists, a crane is not the equivalent of one owned by the borrowing employer, and the true owner of the crane will not acquire an employer's immunity under the rationale of Smith v. Ryder Truck Rentals, Inc. We again hold, therefore, that Pensacola Concrete may be held vicariously liable, as the owner of a dangerous instrumentality, for the negligence of Mann's coemployee into whose care Pensacola Concrete committed the crane. Geffrey v. Langston Const. Co., 58 So.2d 698 (Fla. 1952); Crenshaw Bros. Produce Co. v. Harper, 142 Fla. 27, 194 So. 353 (1940); Southern Cotton Well Co. v. Anderson, 80 Fla. 441, 86 So. 629 (1920); Atlantic Coast Development Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980); and LeSuer v. LeSuer, 350 So.2d 796 (Fla. 1st DCA 1977).
Alternatively, Pensacola Concrete argues that the trial court should have directed a verdict in its favor because the uncontroverted evidence shows, as a matter *281 of law, that Pensacola Concrete had leased its crane to Mann's employer, Commercial Coatings, for valuable consideration at the time of Mann's accident. Without detailing the considerable evidence on this point, we find competent and substantial evidence in the record which supports the jury's finding that Commercial Coatings had not leased the crane for valuable consideration from Pensacola Concrete.
In his appeal, Mann contends that the trial court should have determined as a matter of law that his actions were not a legal cause of his injuries, and the issue of his comparative negligence, therefore, should not have gone to the jury. Mann contends he was injured because his coemployee, Donald Moore, played an unusual and unpredictable practical joke on him. According to Mann's argument, Moore's unforeseeable act of continuing the practical joke and breaking the cable in the face of Mann's protestations was the efficient intervening cause of his injuries. We find the trial court did not err in rejecting Mann's contentions on this point.
An independent efficient intervening cause, sufficient to break the chain of causation between Mann's negligence and his injuries, must have been one truly independent of and not set in motion by Mann's original negligence. Department of Transportation v. Anglin, 502 So.2d 896, 898 (Fla. 1987). Mann's actions in taking a ride on the cable, doing pull-ups, swinging upside down, and failing to jump down when he had the chance, were sufficient to allow the jury to find (as it did) that these actions set in motion the chain of events leading to his fall and constituted a legal, proximate cause of his injuries. Id. Though Mann offered another version of the facts, the court was required to view the evidence in the light most favorable to Pensacola Concrete in ruling on Mann's motion for directed verdict.
AFFIRMED.
BOOTH and NIMMONS, JJ., concur.