538 So.2d 76 (1989)
SCOTT & JOBALIA CONSTRUCTION CO., INC., Appellant,
v.
HALIFAX PAVING, INC., for Use and Benefit of UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellee.
No. 87-1052.
District Court of Appeal of Florida, Fifth District.
February 2, 1989.
*77 Terrence E. Kehoe of Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Orlando, and Richard W. Prospect of Haas, Boehm, Brown, Rigdon, Seacrest & Fischer, P.A., Daytona Beach, for appellant.
Terence R. Perkins of Cobb & Cole, Daytona Beach, for appellee.
SHARP, Chief Judge.
Scott & Jobalia Construction Company, Inc., appeals from a final judgment following a jury trial which established its liability to Halifax Paving, Inc., f/u/b/o United States Fidelity and Guaranty (Halifax's insurer) for $95,586.86. Scott & Jobalia was doing construction work on a site in Volusia County. To accomplish this task, it borrowed a crane and its operator from Halifax. Between Halifax and Scott & Jobalia there was no lease (oral or written) *78 and Scott & Jobalia owed no rent or other compensation for use of the crane. While the crane was in operation, a pipe fell from the sling and struck and injured one of Scott & Jobalia's employees, Grier.
There are three issues in this appeal. The first is whether Halifax is barred by the statute of limitations from suing Scott & Jobalia for recovery of its costs, attorney's fees and a $67,500 settlement it paid to Grier. The second is whether, based on this record, Halifax established its right of common law indemnity against Scott & Jobalia. The third is whether statutory immunity granted to Scott & Jobalia pursuant to the worker's compensation act (§ 440.11(1)) prevents it from being liable as Halifax's indemnitor, and whether immunity pursuant to the worker's compensation act, should have barred any liability on Halifax's part to Grier.
The record in this case established that at the time of the accident on December 31, 1981, the Halifax crane was being operated at a construction site where Scott & Jobalia was the contractor. Scott & Jobalia had previously borrowed the crane from Halifax on other jobs and, as in this case, there was no lease or rental agreement between Scott & Jobalia and Halifax regarding payment for use of the crane. It was a matter of "courtesy."
Operating the crane was Lampp, an employee of Halifax. However, on this job, he worked solely at Scott & Jobalia's direction and control. He obeyed the hand-signals of Scott & Jobalia's foreman as to when to make the crane lift and where to place its load.
At the time of the accident, Scott & Jobalia's employees were attaching pipe to a sling, which was lifted by the crane. The foreman signaled to Lampp to lift. When the sling rose to Lampp's level of sight, Lampp saw the pipe had slipped slightly out of the sling. He pointed that out to the foreman. The foreman signaled to continue to lift. Lampp did, and from twenty-five feet up, a forty-foot section of pipe fell out of the sling. It crashed below, severely injuring Grier, Scott & Jobalia's employee, who was working at the job site.
Grier recovered worker's compensation payments from Scott & Jobalia. He then filed suit against Halifax, as owner of the crane, on July 16, 1984. Scott & Jobalia were aware of the lawsuit, but they did not participate in it. On September 10, 1985, Halifax settled the lawsuit by paying Grier $67,500.
Halifax then brought this suit against Scott & Jobalia for common law indemnity. The suit was filed on January 15, 1986. Halifax's theory, as expressed in its pleadings and throughout the lawsuit, was that Scott & Jobalia should indemnify it for any liability it owed to Grier because that liability was based solely on its ownership of the crane  a vicarious, derivative kind of liability  and any active negligence which caused the accident was solely attributable to Scott & Jobalia.
With regard to actual fault and responsibility for any active negligence which caused Grier's injury, the jury was instructed that it should not return a verdict for Halifax if Halifax actively participated in causing the accident. Only if Halifax was vicariously liable due to ownership of the crane, could they find for Halifax. Further, the jury was instructed that it could only find for Halifax if it found that Lampp was at the time of the accident, a "borrowed servant" of Scott & Jobalia's (i.e., temporarily under Scott & Jobalia's control and direction).
The jury returned a verdict against Scott & Jobalia and in favor of Halifax. It specifically found that Scott & Jobalia was negligent in causing Grier's injuries; and it found that Lampp, at the time of the accident, was Scott & Jobalia's borrowed servant. It also found that the $67,500 paid by Halifax to Grier was a reasonable amount to compensate Grier for his injuries.[1]
Scott & Jobalia argue that Halifax's suit against it is barred by the four-year statute *79 of limitations (95.11(3)(a)), which began to run at the time of the accident and would have expired on December 31, 1985. This suit was filed on January 15, 1986. Scott & Jobalia rely upon Don Reid Ford, Inc. v. Feldman, 421 So.2d 184 (Fla. 5th DCA 1982) and Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976 (Fla. 3d DCA 1983), rev. den., 447 So.2d 885 (Fla. 1984). Both of those cases, however, deal with subrogation rights, not indemnity. Although closely interrelated, the two concepts are different.[2] In subrogation, the subrogee acquires all of the rights of the subrogor (the potential plaintiff), but is subject to all the available defenses the defendant could assert against the subrogor, including the running of the statute of limitations. Allstate at 978. The subrogee "steps into the shoes" of the subrogor.
With regard to indemnity, a joint or possible defendant may discharge another's liability to a plaintiff and then seek to shift the loss to the other party whose active negligence actually caused the injury or damage. In order to seek indemnity, the indemnitee (here, Halifax) must have a legal liability to a plaintiff (here Grier); the liability must be paid; the indemnitor (here Scott-Jobalia) must have a coextensive liability to the plaintiff; and in Florida, the indemnitee must be free from any active negligence or fault.[3] The fact that the real party in interest here is Halifax's liability insurer does not make this a subrogation case. USF & G is subrogated to Halifax's rights, which are in this case, to seek indemnity against Scott & Jobalia. See Truck Discount Corp. v. Serrano, 362 So.2d 340 (Fla. 1st DCA 1978).
It is well established that the statute of limitations does not begin to run in indemnity cases until the indemnitee has paid a judgment, or has made a voluntary payment of its legal liability to an injured party. Mims Crane Service, Inc. v. Insley Manufacturing Corp., 226 So.2d 836 (Fla. 2d DCA), cert. denied, 234 So.2d 122 (Fla. 1969); Castle Construction Co. v. Huttig Sash & Door Co., 425 So.2d 573 (Fla. 2d DCA 1982). Therefore, the statute of limitations in this case only began to run against Halifax on the settlement date  September 10, 1985. Its suit against Scott & Jobalia was therefore timely.
The second issue raised by Scott & Jobalia is whether Halifax sufficiently established its right to common law indemnity with respect to its lack of active negligence and the reasonableness of its settlement with Grier. In light of the jury's finding that Lampp was Scott & Jobalia's borrowed servant,[4] and the total absence of any allegation or claim that the crane and its lifting mechanism were defective,[5] we can only conclude that Halifax's liability to Grier was solely based on its ownership of the crane.
Ownership of a dangerous instrumentality, such as a crane, is a basis upon which to posit vicarious liability to a person injured by the mechanism. It is well established that a crane being used on a construction site is a "dangerous instrumentality" which can subject its owner to vicarious liability. Geffrey v. Langston Construction Co., 58 So.2d 698 (Fla. 1952); Grove Manufacturing Co. v. Storey, 489 So.2d 780, 782 (Fla. 5th DCA), rev. denied, 500 So.2d 546 (Fla. 1986); Mann v. Pensacola Concrete Constr. Co., Inc. (Mann I) 448 So.2d 1132 (Fla. 1st DCA), rev. den., 461 So.2d 115 (Fla. 1984), appeal after remand, (Mann II) 527 So.2d 279 (Fla. 1st DCA), rev. denied, 534 So.2d 400 (Fla. *80 1988); General Portland Land Development Co. v. Stevens, 395 So.2d 1296 (Fla. 4th DCA 1981) (buckhoist, like a crane, is an inherently dangerous activity); Atlantic Coast Development Corp. v. Napoleon Steel Contractors, 385 So.2d 676 (Fla. 3d DCA 1980). See also Serrano; LeSuer v. LeSuer, 350 So.2d 796 (Fla. 1st DCA 1977). Such liability is characterized as "vicarious" or "derivative," as required by Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979) (lack of active negligence or fault necessary in an indemnity suit). See Mortgage Corp. of America v. Vorndran, 334 So.2d 88 (Fla. 3d DCA 1976); Burton v. Diamond Sand & Stone Co., 327 So.2d 95 (Fla. 2d DCA 1976); Atlantic Coast; Serrano; Wetherington, Tort Indemnity in Florida, 8 F.S.U. 383, 397, 410 (1980).
Secondly, we think Halifax sufficiently established that it settled with Grier for a reasonable amount of damages. The testimony at trial provided a sufficient basis to support the jury's specific finding on this point. However, since the record also established that Scott & Jobalia had notice of Grier's suit against Halifax and therefore had an opportunity to appear and defend, proofs and findings on the issue of fairness and reasonableness may not have been necessary. Atlantic Coast; Cf. Hall & Company, Inc. v. McGetrick, 414 So.2d 243 (Fla. 3d DCA 1982); Crystal River Enterprises, Inc. v. N.A.S.I., Inc., 399 So.2d 77 (Fla. 5th DCA 1981).
The third issue in this case is more complex. What is the effect of Florida's worker's compensation law on a statutory employer's immunity rights in an indemnity suit brought by a nonactive tortfeasor for injuries suffered by an employee? And does the overlay of case law interpreting Florida's statutes on this subject give the indemnitee (Halifax) a shared immunity with the statutory employer (Scott & Jobalia) so as to make its payment or settlement with Grier voluntary rather than a legal liability? If there is not a legally imposed liability, common law indemnity will not arise. Castle Construction.
With regard to a joint nonactive tortfeasor's right to sue a statutory employer who enjoys immunity from suit by an injured employee, the Florida Supreme Court has held that if common law indemnity is proper, the immunity provided by the worker's compensation statute will not bar the indemnity suit. 57 Fla.Jur.2d Workmen Compensation § 315 (1985). See L.M. Duncan & Sons, Inc. v. City of Clearwater, 478 So.2d 816 (Fla. 1985); Sunspan Engineering & Const. Co. v. Spring-Lock Scaffolding Co., 310 So.2d 4 (Fla. 1975). In Trail Builders Supply Co. v. Reagan, 235 So.2d 482 (Fla. 1970), the court responded affirmatively to the following certified question:
Whether under the law of Florida, an employer who has made payment of compensation and medical benefits to an injured employee under the Florida Workers Compensation Act may also be liable for indemnity to a passively negligent third party tortfeasor who has been sued for damages by the injured employee when it is alleged in the claim for indemnity that the employer's active negligence was primarily responsible for the injury but the employer invoked the exclusive remedy provisions of the Act.
In Trail Builders, the third party's tort liability was premised on having manufactured a dangerous machine (truss roll press) which injured an employee.
However, if the indemnitee (Halifax) has the type of relationship with the indemnitor (Scott & Jobalia) that triggers immunity under the worker's compensation statute, for the indemnitee as well as the indemnitor, then no indemnity arises because the indemnitee is not liable to the injured employee in the first instance. For example, in Motchkavitz v. L.C. Boggs Industries, Inc., 407 So.2d 910 (Fla. 1981), an injured employee, after collecting worker's compensation from his employer (a plumbing contractor) sued the subcontractor on the construction job, and the owner-general contractor. The court held that both were entitled to statutory immunity. See also Theisen v. Simmons, 419 So.2d 662 (Fla. 5th DCA 1982), approved in part, Employers Ins. of Wausau v. Abernathy, 442 So.2d 953 *81 (Fla. 1983) (owner of crane which injured a subcontractor's employee was a sub-subcontractor on the construction job and enjoyed worker's compensation immunity); Carter v. Sims Crane Service, Inc., 198 So.2d 25 (Fla. 1967) (owner of crane was subcontractor on job when employee of another subcontractor was injured, held entitled to share statutory immunity).
A related rule developed by the courts is that whether the indemnitee is an independent contractor or a subcontractor, an owner who is only vicariously or derivatively liable, is not liable to an injured employee of either, unless he is actively negligent. Florida Power & Light Co. v. Price, 170 So.2d 293 (Fla. 1964); Lingold v. Transmerica Ins. Co., 416 So.2d 1271 (Fla. 5th DCA 1982); Kolarik v. Rodgers Bros. Service, Inc., 268 So.2d 187 (Fla. 2d DCA 1972), cert. den., 272 So.2d 526 (Fla. 1973); 2 Fla.Jur.2d, Agency & Employment § 116 (1977). However, he is liable to a third party (member of the public). See Baxley v. Dixie Land & Timber Co., 521 So.2d 170 (Fla. 1st DCA 1988). Accordingly, common law indemnity would be available only if the party injured was not an employee. See also Pearson v. Harris, 449 So.2d 339 (Fla. 1st DCA 1984).
However, if the indemnitee (Halifax) is not engaged in working on the construction site, and its only connection to the injured employee is that it owns the dangerous instrumentality involved in an accident, (as in this case) still a different rule has been evolved. In Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966), the court held that the owner/lessor of a pair of motorcycles was not vicariously liable to the lessee/employer who sought to recover monies paid to two employees who were injured in the course of their employment while riding the motorcycles. The court said:
On a lease for a term basis to an employer, the motorcycles in this case became, insofar as his employees were concerned, the equivalent of vehicles owned by the employer. They are, so to speak, the vehicles or working tools used in carrying on the employer's business. The employees are not third party members of the public. They are fellow servants, engaged in operating the vehicles similarly as other owned equipment of their employer. They have agreed by accepting the Workmens Compensation Act to release their employer from any civil liability arising under the dangerous instrumentality doctrine...
* * * * * *
Latent, though unexpressed in the opinions below, is the thought that vicarious liability founded on the doctrines of dangerous instrumentality and respondeat superior is primarily for the protection of third party members of the public, rather than injuries sustained by fellow employees under workmen's compensation from negligence inter se.

Smith at 424. See also Zenchak v. Ryder Truck Rentals, Inc., 150 So.2d 727 (Fla. 3d DCA 1963); Smith v. Poston Equipment Rentals, 105 So.2d 578 (Fla. 3d DCA 1958).
If no lease is involved, and the dangerous instrumentality is merely borrowed on a handshake, as in this case, our sister courts hold that there is no shared immunity for the owner of the dangerous instrumentality, and therefore the owner is vicariously liable to an employee of the borrower. See Mann I; Mann II; LeSuer. The court held in Mann:
[W]here no lease exists, a crane is not the equivalent of one owned by the borrowing employer, and the true owner of the crane will not acquire an employer's immunity under the rationale of Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966). We again hold, therefore, that Pensacola Concrete may be held vicariously liable, as the owner of a dangerous instrumentality, for the negligence of Mann's coemployee into whose care Pensacola Concrete [the owner] committed the crane.
Mann II at 280.
In Jackson v. Marine Terminals, Inc., 422 So.2d 882 (Fla. 3d DCA 1982), rev. denied, 427 So.2d 737 (Fla. 1983), the court noted that the vicarious liability doctrine was originally intended to protect third parties (members of the public), and it should *82 have no application to injuries sustained by an employee injured at work by a fellow employee, whether the dangerous instrumentality was leased or simply borrowed. However, in reaching its holding in that case, the court relied upon the fact that there was a rental contract and consideration was paid by the statutory employer for use of a tractor. The owner of the tractor was held not liable to an employee of the borrower injured by the tractor at work, simply on the basis of vicarious liability.
The existence vel non of a lease or compensation owed to the owner of a borrowed crane appears to us to be a distinction without significance. Good public policy based on any common concepts of morality and public interest should not prefer the mercenary over the patriot, the hired gun over the samaritan, the prostitute over the lover, or the paid lessor over the generous friend. To treat lessors and gratuitous lenders of cranes equally does not do damage to the policy enunciated by the supreme court in Smith, since members of the public continue to be protected in either case.
Thus, we hold that Halifax (the indemnitee in this case) shared Scott & Jobalia's worker's compensation immunity from suit by Grier, even though its crane was borrowed on a "handshake" basis. Therefore, common law indemnity does not lie in this case, since the indemnitee owed no legal obligation to Grier. However, we note and acknowledge that this result is in conflict with Mann v. Pensacola and LeSuer.
REVERSED.
DAUKSCH, J., concurs.
COWART, J., concurs specially with opinion.
COWART, Judge, concurring specially.
A crane owner-lender should not be considered or found legally liable for injuries to a borrower-user's employee merely because of ownership of the crane that lifted the pipe that fell and injured the user's employee. The ordinary crane has a peculiar dual character or duplicitous nature[1]  while traveling down a public road it is a motor vehicle and, as such, under Florida law it is a dangerous instrumentality and its owner is vicariously liable for injuries it causes when negligently operated by others with the owner's consent. However, after the crane is no longer being operated as a motor vehicle and is merely being used as a lifting tool, it should not be held, as a matter of law, to be a dangerous instrumentality for which the owner is vicariously liable.
All objects that have sharp edges or sharp points and all objects that have weight and movement, and especially all such objects moved by power, can do serious injury to humans and can be called "dangerous instrumentalities." This description includes all equipment and tools of every type, including all heavy construction equipment, all farm, garden, and yard equipment, and all wood and metal working tools. Power tools such as chain saws and lawn mowers are exceedingly dangerous. A crane is no more dangerous than any other of these common powered equipment, tools or "instrumentalities." If the owner of a crane is vicariously liable for injuries negligently caused by a borrower-user, then every citizen is vicariously liable when he loans his power saw or lawn mower to a neighbor who, using it, negligently injures a third person. The legal decision of the trial court in this case, which assumes the crane owner is legally liable for the injuries to the employee of the crane borrower-user, is but an example of an insidious legal trend extending the concept of legal liability without fault and making owners of property liable for injuries occurring on or near their property. Society is not ready for the law to hold the owners of all "dangerous" objects vicariously liable without fault for injuries caused by their negligent use by persons other than the owner *83 or his agents. If these legal trends are to become established law, it should occur not because, case by case, the courts slowly expand and establish them, but only after they have been openly and fully debated before, and adopted by, legislators, who, at least theoretically, represent the views, values, and desires of organized society.
NOTES
[1] There was testimony from an insurance adjuster and an attorney that Grier's case was worth considerably more than $67,500.
[2] 42 C.J.S. Indemnity § 2 at 565 (1944).
[3] 42 C.J.S. Indemnity § 25 at 603-604 (1944); Allstate Ins. Co. v. Metropolitan Dade County, 436 So.2d 976, 978 (Fla. 3d DCA 1983), rev. denied, 447 So.2d 885 (Fla. 1984); Houdaille Industries, Inc. v. Edwards, 374 So.2d 490 (Fla. 1979).
[4] See Postal Telegraph & Cable Co. v. Doyle, 123 Fla. 695, 167 So. 358 (1936); Kurfess v. Frohlick Crane Service, Inc., 543 P.2d 1304 (Colo. App. 1975); 2 Fla.Jur.2d, Agency & Employment § 205 (1977). Cf. Burton v. Diamond Sand & Stone Co., 327 So.2d 95 (Fla. 2d DCA 1976); Florida Crane Service, Inc. v. Cary, 215 So.2d 50 (Fla. 4th DCA 1968).
[5] Cf. Geffrey v. Langston Const. Co., 58 So.2d 698 (Fla. 1952).
[1] See Crane Rental of Orlando, Inc. v. Hausman, 518 So.2d 395 (Fla. 5th DCA 1987), approved, 532 So.2d 1057 (Fla. 1988).