PER CURIAM.
Appellant (plaintiff in an indemnity suit) contends that the trial court erred in granting summary judgment for the defendant in reliance on Halifax Paving, Inc. v. Scott & Jobalia Construction Company, Inc., 565 So.2d 1346 (Fla.1990), which was decided after the suit was filed. We agree, but certify the question to the supreme court.
This is the third time this case has been before this court. Frank Randall Mann was seriously injured at work in 1981 when the cable snapped on a crane whose ball he was riding and he fell, the ball landing on him. Mann was employed by Commercial Coatings, Inc., whose owner, James Murphy, had orally arranged to borrow the crane from Pensacola Concrete, owned by Robert Harris. Donald Moore, Mann’s supervisor, was driving the crane at the time of the accident. Mann sued Pensacola Concrete (as owner of the crane operated with its consent) and his co-employee Moore (alleging gross negligence to avoid the workers’ compensation immunity).
In 1984, this court reversed a summary judgment for Pensacola Concrete which had relied on Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla.1966), finding that the employer’s immunity did not extend to Pensacola Concrete as lessor of the crane, because there was no lease for valuable consideration, so that the crane was not “equivalent” to one owned by Commercial Coatings. This court also found that while there was no evidence of active negligence on the part of Pensacola Concrete, *146 the amended complaint was sufficient to raise the issue of its vicarious liability predicated on the dangerous instrumentality doctrine. See Mann v. Pensacola Concrete Construction Company, Inc., 448 So.2d 1132 (Fla. 1st DCA), rev. den., Pensacola Concrete Construction Company, Inc. v. Mann, 461 So.2d 115 (Fla.1984) (Mann I).
In 1988, this court affirmed a $1,200,000 judgment in Mann’s favor. The jury had found $2,000,000 in damages, that Moore was 60% negligent, that Mann was 40% negligent, and that Commercial Coatings had not leased the crane from Pensacola Concrete. On appeal, this court rejected Mann’s contention the trial court should have found his actions were not a legal cause of his injuries. On cross-appeal by Pensacola Concrete, this court declined to alter its previous ruling on the vicarious liability issue, and upheld the jury’s finding that the crane had not been leased for valuable consideration from Pensacola Concrete. See Mann v. Pensacola Concrete Construction Company, Inc., 527 So.2d 279 (Fla. 1st DCA), rev. den., Pensacola Concrete Construction Company, Inc. v. Mann, 534 So.2d 400 (Fla.1988) (Mann II).
On October 13, 1988, one of Pensacola Concrete’s insurers paid Mann $1,073,391 pursuant to the judgment. On September 29,1989, Pensacola Concrete sued Commercial Coatings, alleging that it was entitled to common law indemnity for this amount plus interest, attorney fees, and costs, on the grounds that it was free of active negligence and that the accident was caused by the negligence of Commercial Coatings and its employees. An Answer was filed on March 5, 1990, raising the affirmative defenses of workers’ compensation immunity and Pensacola Concrete’s own negligence. A Reply denying the affirmative defenses was filed on March 9, 1990.
On January 8, 1991, Pensacola Concrete filed a motion for summary judgment; on February 5, Commercial Coatings filed its motion for summary judgment, alleging that workers’ compensation was the exclusive remedy for an employee who was injured in an accident involving a crane which was informally borrowed, citing Halifax Paving, Inc. At the hearing on the two motions, the parties presented essentially the same arguments that are presented on appeal. Judge Anderson remarked that his decision would not be the final one: “The Court that screwed this thing up to begin with will make the final decision.” He reluctantly granted summary judgment to Commercial Coatings, noting in his letter to the attorneys: “It appears that injustice is done whichever way this court rules, but it also appears impossible for this court to follow the law and to do justice.”
Pensacola Concrete argues that at the time it filed its complaint, the law in Florida was clear that it could be held vicariously liable for Mann’s injuries under the dangerous instrumentality doctrine, and that it could sue Mann’s employer for indemnity and subrogation on the basis that it was free from any actual negligence. It asserts that the supreme court’s subsequent retreat from this law in Halifax (which it argues is distinguishable on the fact that the owner of that “borrowed crane” had settled the lawsuit by the injured employee before seeking common law indemnity from the employer), should not prevent it from pursuing its subrogation and indemnity claim against Commercial Coatings.
In Halifax, the jury found for the crane owner in the indemnity suit. The Fifth District Court of Appeal reversed, finding that common law indemnity would not lie because the owner of the crane shared the employer’s immunity and had no legal liability to the injured employee, even though the crane was borrowed on a handshake basis, contrary to Mann I, Mann II, and Lesuer v. Lesuer, 350 So.2d 796 (Fla. 1st DCA 1977). See Scott & Jobalia Construction Company, Inc. v. Halifax Paving, Inc., 538 So.2d 76 (Fla. 5th DCA 1989). The supreme court accepted conflict certio-rari and expressly overruled Mann I, Mann II, and Lesuer, finding that the differences between Halifax and Smith (the dangerous instrumentality was leased in Smith and informally borrowed in Halifax; the operator of the crane in Smith was a fellow servant, while the operator in Hali *147 fax was a borrowed servant) did not justify different results in the two cases.
Pensacola Concrete argues that in Halifax, the crane owner’s settlement with the employee was purely voluntary and no legal liability had ever been imposed upon the crane owner. In the case at issue, the question of the crane owner’s legal liability to the injured employee was twice ruled upon by this court, and twice the supreme court declined to review those decisions. Pensacola Concrete argues that its payment of the judgment to Mann after years of vigorously contesting its legal liability was not a voluntary act, as in Halifax, but was compelled by a jury’s finding of legal liability. It argues that Halifax should not be applied retroactively to deprive it of its right to indemnity.
Commercial Coatings contends that the trial court correctly granted its motion for summary judgment based on Halifax, noting that it was not a party to Mann I and Mann II and that the supreme court did not declare its opinion in Halifax to have only a prospective effect, but specifically disapproved Mann I, Mann II, and Lesuer.
Pensacola Concrete replies that preventing it from seeking indemnity to which it is clearly entitled would work much more of an injustice than calling upon Commercial Coatings to indemnify it for a judgment for which Commercial Coatings was factually responsible.
The opinion of the Fifth District Court of Appeal on the indemnity issue in Halifax, which was approved by the supreme court, appears to turn on the fact that since the employer’s immunity extended to the crane owner, who therefor had no legal liability to the injured worker, the settlement for which the crane owner was seeking indemnity from the employer was voluntarily paid, so that a claim for common law indemnity would not arise. It is clear from the facts of this case that the payment for which Pensacola Concrete seeks indemnity from Mann’s employer, Commercial Coatings, was not voluntary, but was made pursuant to a full judicial determination of Pensacola Concrete’s legal liability to Mann. The fact that the supreme court, having twice declined to review the question upon which Pensacola Concrete’s legal liability was determined, later disapproved this court’s rulings on that question, does not change the fact that Pensacola satisfied its judicially determined liability to Mann and thereafter commenced its suit for indemnity, to which it was entitled under the common law. While the supreme court’s ruling in Halifax, had it been applied in Mann I or Mann II, would have insulated Pensacola Concrete from liability, it did nothing to affect the law of indemnity. The vicarious liability of the owner of the dangerous instrumentality, absent the owner’s active negligence, can still be visited on the active tortfeasor. Halifax does not create a defense to common law indemnity or an immunity from common law indemnity. It creates an immunity from vicarious liability. Since it was determined judicially in this case that no immunity existed and the legal liability was affirmed, the law of indemnity permits Pensacola Concrete to bring its action against Commercial Coatings.
We do not think it appropriate, under the particular circumstances of this case, to apply the supreme court’s ruling on the immunity question in Halifax to this indemnity action. However, in view of the unique procedural context of this case, we certify this question to the supreme court as one of great public importance.
The judgment of the trial court is REVERSED and the case REMANDED for further proceedings.
WIGGINTON, BARFIELD, and WOLF, JJ., concur.