616 So.2d 960 (1993)
COMMERCIAL COATINGS OF NORTHWEST FLORIDA, INC., Petitioner,
v.
PENSACOLA CONCRETE CONSTRUCTION COMPANY, INC., Respondent.
No. 79488.
Supreme Court of Florida.
April 8, 1993.
Larry Hill, Moore, Hill & Westmoreland, P.A., Pensacola, for petitioner.
Kathryn E. Errington and W.H.F. Wiltshire, Harrell, Wiltshire, Swearingen, Wilson & Harrell, P.A., Pensacola, and John Beranek, Aurell, Radey, Hinkle, Thomas & Beranek, Tallahassee, for respondent.
OVERTON, Justice.
We have for review Pensacola Concrete Construction Co. v. Commercial Coatings, Inc., 595 So.2d 145 (Fla. 1st DCA 1992). In prior proceedings, the district court held that Pensacola Concrete, which loaned Commercial Coatings a crane, was vicariously liable under the dangerous instrumentality doctrine for injuries sustained *961 by a Commercial Coatings employee and that workers' compensation immunity did not extend to Pensacola Concrete. In this action, Pensacola Concrete sought indemnification from Commercial Coatings for a judgment entered against Pensacola Concrete in the amount of $1.2 million. The district court held that common law indemnity applied even though the effect would require Commercial Coatings to pay damages to one of its employees covered by workers' compensation. The district court then certified its decision. We have jurisdiction.[1]
This case is unusual in its facts and procedural posture. It is the direct result of the First District Court of Appeal's initial decision in Mann v. Pensacola Concrete Construction Co., 448 So.2d 1132 (Fla. 1st DCA), review denied, 461 So.2d 115 (Fla. 1984), holding that workers' compensation immunity did not apply to Pensacola Concrete in these circumstances, and our subsequent decision in Halifax Paving, Inc. v. Scott & Jobalia Construction Co., 565 So.2d 1346 (Fla. 1990), disapproving that holding. This case presents us with the difficult task of deciding which of the parties is responsible for this judgment, without affecting the immunity under the workers' compensation law or the principles of common law indemnity. For the reasons expressed, we approve the decision of the district court and find that both equity and common law principles of indemnity allow recovery by Pensacola Concrete against Commercial Coatings in these limited and unique circumstances.
This is the third appeal proceeding arising from this incident, and it is necessary to detail the facts and procedural history to understand our decision in this case.

Mann I
This cause began in 1981 when Frank Randall Mann was injured at work. The district court, in its first decision in this claim, in Mann v. Pensacola Concrete Construction Co., 448 So.2d 1132, 1133-34 (Fla. 1st DCA), review denied, 461 So.2d 115 (Fla. 1984) (Mann I), stated the facts as follows:
James Murphy, Mann's employer and owner of Commercial Coatings, Inc., arranged with Robert Harris, owner of Pensacola Concrete Construction Company, Inc., to borrow Pensacola Concrete's crane. Harris agreed to loan Murphy the crane, free of charge, as a favor.
The following weekend, on the day of the accident, Donald Moore, another of Murphy's employees, decided that the use of the crane was necessary to expedite a particular phase of construction. Apparently without asking permission of Murphy, who was not present at the construction site that day, Moore and a co-employee drove to Pensacola Concrete's yard to pick up the crane. Moore approached the crane, noticed it had the keys in it, and drove it back to the construction site without any instructions from, or conversation with, an agent or employee of Pensacola Concrete.
When Moore returned to the job driving the crane, Mann signaled to him and jumped onto the hook and ball at the end of the crane's cable. Moore was under the impression from Mann's smiling that he wanted to have some fun, so Moore extended the crane's boom, and raised Mann several feet from the ground. The cable snapped, causing Mann to fall and thereby to suffer severe injury.
According to Murphy, when he inspected the crane after the accident he observed no defects. Rather, it was his opinion that Moore had extended the boom of the crane too far without allowing slack on the cable, thereby causing the cable to break from tension.
Harris stated that although he was not present when Moore picked up the crane, he was under the impression that one of his company employees brought the crane over to the construction site, and instructed Murphy's employee on the operation of the crane, as that was how it had been handled when Murphy borrowed the crane in the past. Harris maintained that the crane and the cable *962 were always inspected before the crane was operated.
By amended complaint, Mann sued Pensacola Concrete and his co-employee Moore for damages, alleging only that Pensacola Concrete owned the crane which was operated, with its permission and consent, by Moore who acted with "gross negligence and reckless disregard to the rights of" Mann.
Pensacola Concrete answered the amended complaint by admitting that it had loaned the crane, free of charge, to Commercial Coatings, Inc., but denying that it had given permission to Donald Moore to operate the crane. Pensacola Concrete presumed that if any permission was given to Moore, it was given by Moore's employer, Murphy. It further denied exercising control over the operation of the crane at any time material to Mann's injury. Pensacola Concrete also moved for summary judgment on the basis that there was no negligence on its part, and that there was no defect in the crane known by, or which should have been known by, Pensacola.
(Footnote omitted).
The trial court granted Pensacola Concrete's motion for summary judgment based on Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966), which extended an employer's immunity under workers' compensation for an employee's injuries to the lessor of the vehicle that caused the injury through its negligent operation. On appeal, the district court held that Pensacola Concrete was not negligent in operating the crane and that the crane was not defective at the time it was loaned to Commercial Coatings. However, the district court stated that "the amended complaint, although bare bones, [was] sufficient to raise the issue of vicarious liability predicated on the dangerous instrumentality doctrine." Mann I, 448 So.2d at 1135. The district court also held that, for workers' compensation immunity to extend to Pensacola Concrete under Smith, there must have been a signed lease for the crane to be considered "the `equivalent' [of] one owned by Commercial Coatings." Id. at 1134. Since it was undisputed that no lease agreement existed between the parties and that Pensacola Concrete had informally loaned the crane to Commercial Coatings, the district court held that Commercial Coatings' workers' compensation immunity did not extend to Pensacola Concrete and reversed the trial court's summary judgment.

Mann II
On remand from that decision, the jury returned a verdict in Mann's favor for $2 million, which was reduced to $1.2 million based on the jury's finding that Mann was 40% negligent. On appeal, the district court rejected Mann's argument that it should find as a matter of law that his actions were not a legal cause of his injuries. The district court also rejected Pensacola Concrete's argument that the crane "should be treated as if [it were] owned outright by Mann's employer, thus providing a shield of immunity for Pensacola Concrete, notwithstanding its status as the actual owner of the dangerous instrumentality." Mann v. Pensacola Concrete Constr. Co., 527 So.2d 279, 280 (Fla. 1st DCA), review denied, 534 So.2d 400 (Fla. 1988) (Mann II). In Mann II, the district court also reaffirmed its previous ruling that "where no lease exists, a crane is not the equivalent of one owned by the borrowing employer, and the true owner of the crane will not acquire an employer's immunity under the rationale of Smith v. Ryder Truck Rentals, Inc." Id. Further, the district court reaffirmed its holding that Pensacola Concrete could be held "vicariously liable, as the owner of a dangerous instrumentality, for the negligence of Mann's coemployee into whose care Pensacola Concrete committed the crane." Id. Based on the decision of the district court in Mann II, Pensacola Concrete and its insurers paid the judgment on October 13, 1988.

Halifax Paving
On February 19, 1990, this Court issued its opinion in Halifax Paving, Inc. v. Scott & Jobalia Construction Co., 565 So.2d 1346 (Fla. 1990). In that case, Halifax Paving loaned a crane to Scott & Jobalia (S & *963 J). Under the direction of S & J workers, a Halifax Paving employee was operating the crane when another S & J worker was injured. The injured worker recovered worker's compensation benefits from S & J, and then sued Halifax Paving as the owner of the crane. Halifax Paving settled the claim prior to trial and then sued S & J for common law indemnity on the ground that "any active negligence was attributable to S & J." Id. at 1347. The jury returned a verdict for Halifax Paving. The Fifth District reversed, holding that the owner of a dangerous instrumentality that is informally borrowed by the injured person's employer shares the employer's workers' compensation immunity. This court accepted jurisdiction in Halifax based on direct conflict with Mann I. In approving the decision of the Fifth District Court in Halifax, we stated:
[T]his Court established in Smith v. Ryder Truck Rentals, Inc., 182 So.2d 422 (Fla. 1966), that a worker injured by a leased dangerous instrumentality operated by a fellow worker is limited to no more recovery than that permitted by the worker's compensation statutes. The central rationale of Smith is that leased equipment used on a job site in effect has become the working tool of the employer. Thus, the exclusivity principle of worker's compensation comes to bear.
We see no reason why a different result should obtain in the present case. The only relevant differences between this case and Smith are that the dangerous instrumentality in this instance was informally borrowed... . We agree with the Fifth District that these differences are not sufficient to justify a different result than that in Smith.

Id. (footnote and citations omitted). In Halifax, we expressly disapproved the opinions of the First District Court in Mann I and Mann II. As the law now stands, workers' compensation is the sole remedy available where a worker is injured by a borrowed dangerous instrumentality, whether leased or loaned. Halifax.

This Case
Prior to our Halifax decision, on September 29, 1989, Pensacola Concrete filed its complaint against Commercial Coatings alleging that Pensacola Concrete was entitled to common law indemnity. Commercial Coatings filed a motion for summary judgment on the basis that workers' compensation is the exclusive remedy for an employee injured in an accident involving a crane that was informally borrowed. The trial court granted Commercial Coatings' motion for summary judgment. The First District Court of Appeal reversed, holding that our Halifax decision did not create a defense to the common law indemnity action.
Pensacola Concrete and its insurers paid the $1.2 million judgment only after twice appealing to the district court and this Court the issue of its liability and the applicability of workers' compensation. Pensacola Concrete was, therefore, legally obligated to pay the claim. Under our Halifax decision, workers' compensation immunity would extend to Pensacola Concrete if the case were decided today.
Commercial Coatings argues that Halifax should not be interpreted to require indemnification under these circumstances. The real question is who should pay the judgment as a result of the district court's prior decisions. Clearly, under the law, Mann should have been limited to recovering under workers' compensation. The problem is whether the contractor whose employees used the crane negligently should pay the judgment, or whether the non-negligent owner of the crane, who informally loaned the crane, should pay the judgment. We agree with the district court that, under the law at the time, Pensacola Concrete was required to pay the judgment and that it was then entitled to indemnity under the common law. In so holding, the employer is, in effect, paying an employee damages for which that employer is supposed to be immune under the workers' compensation law. We find that our Halifax decision does not affect the law of indemnity under the unique circumstances and procedural context of this case, *964 and we conclude that equity and common law principles of indemnity require that the employer, Commercial Coatings, pay this judgment in these special circumstances. For the reasons expressed, we approve the decision of the district court.
It is so ordered.
BARKETT, C.J., and McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
SHAW, J., recused.
NOTES
[1] Art. V, § 3(b)(4), Fla. Const.